Filed 6/29/17; pub. order 7/25/17 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FILMON.COM, | B264074 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC561987) |
| v. | |
| DOUBLEVERIFY, INC. | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry A. Green, Judge. Affirmed.

Baker Marquart, Ryan G. Baker, Jaime W. Marquart, Christian A. Anstett and Blake D. McCay for Plaintiff and Appellant.

Fox Rothschild, Lincoln D. Bandlow and Margo J. Arnold for Defendant and Respondent.

## INTRODUCTION

Plaintiff FilmOn.com (FilmOn) is an Internet-based entertainment media provider. Defendant DoubleVerify, Inc. (DoubleVerify) provides authentication services to online advertisers. FilmOn sued DoubleVerify for trade libel, slander, and other business-related torts, alleging DoubleVerify falsely classified FilmOn's websites under the categories "Copyright Infringement-File Sharing" and "Adult Content" in confidential reports to certain clients that subsequently cancelled advertising agreements with FilmOn. DoubleVerify moved to strike the causes of action pursuant to the anti-SLAPP statute (Code Civ. Proc., § 425.16), arguing its reports accurately addressed issues of widespread public interest—namely, the existence of adult content and copyright infringing material on publicly available websites, such as FilmOn.[1] The trial court granted the motion.

FilmOn appeals from the order striking its causes of action against DoubleVerify. As its sole ground for appeal, FilmOn contends DoubleVerify failed to make the requisite threshold showing that the challenged causes of action arose from protected activity. We conclude the trial court properly found DoubleVerify engaged in conduct in furtherance of its constitutional right of free speech in connection with an issue of public interest. We affirm.

---

[1]     SLAPP is an acronym for strategic lawsuit against public participation. (See *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57 (*Equilon*).) Statutory references are to the Code of Civil Procedure unless otherwise indicated.

## FACTS AND PROCEDURAL BACKGROUND

1. *The Parties*

DoubleVerify provides authentication services relating to the quality of digital media for online advertising. Advertising agencies, marketers, publishers, ad networks and other companies hire DoubleVerify to detect and prevent waste or misuse of advertising budgets and to help take proactive measures to maintain brand reputation. To provide this service, DoubleVerify monitors websites designated by its clients and determines, among other things, if the websites have content the client may consider inappropriate. DoubleVerify compiles this information into confidential reports for each client. These reports consist of a spreadsheet with advertising data (such as the length of time an ad is displayed on a website and the regional location of the website's viewers) and a "tag" or label classifying the website's content. The report is accompanied by a glossary of definitions for each tag.

FilmOn is an Internet-based entertainment content provider. FilmOn's services include access to hundreds of television channels, premium movie channels, pay-per-view channels and over 45,000 video-on-demand titles. FilmOn distributes its programming through several different website domains (the FilmOn Websites). FilmOn derives a significant portion of its revenue from advertising.

2. *FilmOn's Lawsuit*

FilmOn sued DoubleVerify for trade libel, slander, tortious interference with contract, and other business-related torts, alleging DoubleVerify distributed reports to certain FilmOn advertisers with false and disparaging classifications of one or

more of the FilmOn Websites.[2]  The complaint alleged DoubleVerify's reports "falsely classif[ied] the FilmOn Websites under the categories of 'Copyright Infringement-File Sharing' and 'Adult Content.' "

According to the complaint, DoubleVerify's accompanying glossary defined the category " 'Copyright Infringement: Streaming or File Sharing' " as " 'Sites, presently or historically, associated with access to or distribution of copyrighted material without appropriate controls, licensing, or permission; including but not limited to, sites electronically streaming or allowing user file sharing of such material.' "  The glossary defined the " 'Adult Content' " category as " '[m]ature topics which are inappropriate viewing for children including explicit language, content, sounds and themes.' "  The complaint acknowledged that "some of FilmOn's programming may be properly characterized as R-rated," but alleged "the vast majority of the programming available on FilmOn does not fit within any definition of adult content."

---

[2]     FilmOn's seven-count first amended complaint asserted causes of action for (1) trade libel; (2) tortious interference with contract; (3) tortious interference with prospective economic advantage; (4) unfair competition; (5) false advertising; (6) slander; and (7) negligence.  The causes of action for negligence and slander were asserted exclusively against AOL, Inc., which is not a party to this appeal.  All other causes of action were asserted against DoubleVerify or all defendants.

4

With respect to each of the complaint's five causes of action against DoubleVerify, FilmOn alleged "the false statements made by [DoubleVerify] in [its reports] have caused . . . ad partners and potential ad partners of FilmOn to decline to advertise through their websites," resulting in lost profits and other consequential damages.

3. *The Anti-SLAPP Motion*

DoubleVerify responded with a special motion to strike the subject causes of action pursuant to the anti-SLAPP statute. With respect to the first prong of the anti-SLAPP analysis— whether the challenged causes of action arose out of protected conduct—DoubleVerify argued its reports concerned matters of public interest insofar as the prevalence of adult content and copyright infringing material on the Internet had received attention from both the public and government regulatory agencies. To support the contention, DoubleVerify submitted several press releases and reports concerning the Family Entertainment Protection Act and efforts by the Federal Trade Commission to address the marketing of violent entertainment to children.[3] With regard to copyright infringement, DoubleVerify submitted press reports concerning numerous lawsuits filed by media production companies against FilmOn. DoubleVerify's

---

[3] The Family Entertainment Protection Act was proposed federal legislation to prohibit the sale of mature and adults-only video games to minors. The bill did not become law. Similar bills were passed in states such as California, prompted in part by public debate over sexually explicit content in several popular video games. These laws were ultimately ruled unconstitutional. (See Byrd, *It's All Fun and Games Until Someone Gets Hurt: The Effectiveness of Proposed Video-Game Legislation on Reducing Violence in Children* (2007) 44 Hous. L. Rev. 401, 405-410 & fn. 63.)

evidence also included the complaints filed and injunctions entered in a number of federal district courts against FilmOn for copyright infringement. With respect to the second prong—whether FilmOn could establish a probability of prevailing on its claims—DoubleVerify argued a "quick examination of FilmOn's website[s]" proved DoubleVerify's "classifications [were] entirely accurate."[4]

In opposing the motion, FilmOn argued the alleged misconduct did not concern a matter of public interest because DoubleVerify distributed its confidential reports to paying subscribers only. FilmOn also argued the "act of classifying or certifying certain products or services" was not conduct in furtherance of DoubleVerify's right of free speech. As for the merits of its claims, FilmOn maintained the district court injunctions were insufficient to establish copyright infringement because the law concerning the relevant technology was unsettled. It also argued DoubleVerify's "Adult Content" classification was unreasonably misleading.

4. *The Trial Court Order*

The trial court granted the motion to strike. The court found the public had a demonstrable interest in knowing what content is available on the Internet, especially with respect to adult content and the illegal distribution of copyrighted material. The court analogized DoubleVerify's conduct to more publicly visible media advisory efforts, observing it was "not any different,

---

[4]     In connection with the second prong, DoubleVerify submitted screen captures of the "categories of adult content listed in the Video on Demand ('VOD') section of Filmon.com's 'Hotties' content grouping." DoubleVerify also relied upon the district court orders and injunctions entered against FilmOn in a handful of copyright infringement cases.

6

really, than the Motion Picture Association putting ratings on movies." Further, in view of the "massive amount of attention" paid to FilmOn's business in the area of copyright infringement, the court concluded DoubleVerify's reports clearly concerned a matter of interest to the public. As for the merits of the challenged causes of action, the court found FilmOn failed to establish a probability of success because the undisputed evidence showed DoubleVerify's statements were essentially true and DoubleVerify did not make the statements with the intention to harm FilmOn's business.

## CONTENTIONS

FilmOn contends the challenged causes of action did not arise out of conduct in furtherance of DoubleVerify's constitutional right of free speech. Specifically, FilmOn argues the statements contained in DoubleVerify's reports did not concern "a public issue" or "an issue of public interest," as required by section 425.16, subdivisions (b)(1) and (e)(4), because (1) the reports contained only "[b]asic classification and certification decisions" with "little to no analysis or opinion"; and (2) the reports were made "entirely in private, to individual companies that subscribe to [DoubleVerify's] services."

For the reasons that follow, we conclude the statements contained in DoubleVerify's reports, which formed the basis for FilmOn's causes of action, did concern issues of public interest, and the trial court properly found the threshold requirement for anti-SLAPP protection was met.

7

## DISCUSSION

1. *Anti-SLAPP Procedure and Standard of Review*

The anti-SLAPP statute, section 425.16, provides a procedure for expeditiously resolving "nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue." (*Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 235 (*Sipple*).) "When served with a SLAPP suit, the defendant may immediately move to strike the complaint under section 425.16. To determine whether this motion should be granted, the trial court must engage in a two-step process." (*Hansen v. Department of Corrections & Rehabilitation* (2008) 171 0Cal.App.4th 1537, 1543 (*Hansen*); *Equilon, supra,* 29 Cal.4th at p. 67.)

The first prong of the anti-SLAPP analysis requires the court to decide "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." (*Equilon, supra,* 29 Cal.4th at p. 67; § 425.16, subd. (b)(1).) The defendant makes this showing by demonstrating the acts of which the plaintiff complains were taken "in furtherance of the [defendant's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." (§ 425.16, subd. (b)(1); *Equilon,* at p. 67.) "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92 (*Navellier*).) "[T]he critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.)

8

If the court determines the defendant has made the threshold showing, "it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Navellier, supra,* 29 Cal.4th at p. 88; § 425.16, subd. (b)(1).) Here, however, we are concerned with only the first prong of the anti-SLAPP analysis, because FilmOn does not challenge the trial court's finding concerning FilmOn's probability of prevailing on its claims.

We review both prongs of the anti-SLAPP analysis de novo. (*Hansen, supra,* 171 Cal.App.4th at p. 1544.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier, supra,* 29 Cal.4th at p. 89.)

2. *Issue of Public Interest Under the Anti-SLAPP Statute*

The trial court found that each cause of action asserted against DoubleVerify was based on the allegation that a "recently published [DoubleVerify] impression quality report incorrectly described and misclassified [FilmOn] and its related websites in the 'Copyright Infringement-File Sharing' and 'Adult Content' categories," which caused some of FilmOn's "advertising partners to pull advertising from FilmOn's websites." In its motion, DoubleVerify argued this alleged activity qualified for anti-SLAPP protection under section 425.16, subdivision (e)(4), which safeguards conduct "in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech *in connection with a public issue or an issue of public interest.*" (§ 425.16, subd. (e)(4), italics added.) The trial court agreed, concluding DoubleVerify's conduct concerned issues of public interest—namely, the regulation of Internet content, the

9

presence of adult content on websites accessible to children, and intellectual property theft.

Section 425.16 does not define "public interest" or "public issue." "Those terms are inherently amorphous and thus do not lend themselves to a precise, all-encompassing definition." (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 371 (*Cross*); see *Rivero v. American Federation of State, County, and Municipal Employees, AFL–CIO* (2003) 105 Cal.App.4th 913, 929 (*Rivero*); see also *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132 (*Weinberg*) ["it is doubtful an all-encompassing definition could be provided"].) Indeed, some courts, paraphrasing Justice Stewart's famous quip, have suggested that " ' "no standards are necessary because [courts and attorneys] will, or should, know a public concern when they see it." ' " (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1122, fn. 9 (*Briggs*); *D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1214-1215; *Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 117 (*Du Charme*); see *Jacobellis v. Ohio* (1964) 378 U.S. 184, 197 (conc. opn. of Stewart, J.).)

Nevertheless, courts have expounded on principles that should guide the assessment of whether a statement concerns a matter of public interest. In *Nygård, Inc. v. Uusi–Kerttula* (2008) 159 Cal.App.4th 1027 (*Nygård*), the court observed that while section 425.16 does not define " 'public interest,' " it does mandate that its provisions " 'be construed broadly' to safeguard 'the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' " (*Id*. at p. 1039, quoting § 425.16, subd. (a).) The *Nygård* court explained that "[t]he directive to construe the statute broadly was added in 1997, when the Legislature amended the anti-SLAPP statute 'to address recent court cases that have too narrowly construed California's anti-SLAPP suit statute.' " (*Nygård,* at p. 1039; accord, *Briggs,*

10

*supra,* 19 Cal.4th at p. 1120.) Taken together, the *Nygård* court reasoned that the legislative history of the amendment and the cases that precipitated it "suggest that 'an issue of public interest' . . . is *any issue in which the public is interested.* In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest." (*Nygård,* at p. 1042; *Cross, supra,* 197 Cal.App.4th at pp. 372-373.)

Further, because the statute mandates broad construction, courts have determined, and the Legislature has endorsed the view, that section 425.16 "governs even private communications, so long as they concern a public issue." (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 897 (*Wilbanks*); *Averill v. Superior Court* (1996) 42 Cal.App.4th 1170, 1175 [the Legislature did not intend to exclude private conversations from protection under the statute]; *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1546 (*Terry*) [holding, § 425.16, subd. (e)(4) "applies to private communications concerning issues of public interest"].)

In *Rivero*, the court identified three non-exclusive and sometimes overlapping categories of statements that have been found to encompass an issue of public interest under the anti-SLAPP statute. (*Rivero, supra,* 105 Cal.App.4th at pp. 919-924; *Cross, supra,* 197 Cal.App.4th at p. 373.) The first category comprises cases where the statement or activity precipitating the underlying cause of action was "a person or entity in the public eye." (*Rivero,* at p. 924; see, e.g., *Sipple, supra,* 71 Cal.App.4th at p. 239 [national figure]; *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 651 (*Church of Scientology*) [church subject to intense public scrutiny]; *Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 807-808 [a television show of "significant interest to the public and the media"].) The second

category comprises cases where the statement or activity involved "conduct that could directly affect a large number of people beyond the direct participants." (*Rivero,* at p. 924; see, e.g., *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 479 [home owners association's governance of 3,000 residents]; *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 15 [environmental effects of mall development]; *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1420 [potential safety hazards affecting residents of large condominium complex].) And the third category comprises cases where the statement or activity involved "a topic of widespread, public interest." (*Rivero,* at p. 924; see, e.g., *M. G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623, 629 [molestation of child athletes by coaches]; *Annette F. v. Sharon S.* (2004) 119 Cal.App.4th 1146, 1162 [second-parent adoptions, particularly in the gay and lesbian community]; *Terry, supra,* 131 Cal.App.4th at p. 1549 [inappropriate relationships between adults and minors].) "Courts have adopted these categories as a useful framework for analyzing whether a statement implicates an issue of public interest and thus qualifies for anti-SLAPP protection." (*Cross, supra,* 197 Cal.App.4th at pp. 373-374 [listing cases].)

In *Weinberg*, the court, citing federal cases, enumerated the following additional attributes of an issue that would make it one of public, rather than merely private, interest. (*Weinberg, supra,* 110 Cal.App.4th at pp. 1132-1133; *Cross, supra,* 197 Cal.App.4th at p. 374.) "First, 'public interest' does not equate with mere curiosity. [Citations.] Second, a matter of public interest should be something of concern to a substantial number of people. [Citation.] Thus, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest. [Citations.] Third, there should be some degree of

closeness between the challenged statements and the asserted public interest [citation]; the assertion of a broad and amorphous public interest is not sufficient [citation].  Fourth, the focus of the speaker's conduct should be the public interest rather than a mere effort 'to gather ammunition for another round of [private] controversy . . . .'  [Citation.] Finally, . . . [a] person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people."  (*Weinberg,* at pp. 1132-1133.)

With these principles in place, we turn to FilmOn's specific contentions concerning DoubleVerify's statements, and whether those statements concerned a public issue or an issue of public interest under the anti-SLAPP statute.

3.    *DoubleVerify's Statement that FilmOn Hosted Adult Content and Copyright Infringing Material on Its Website Concerned Issues of Public Interest*

FilmOn contends DoubleVerify's reports designating certain FilmOn Websites in the "Copyright Infringement-File Sharing" and "Adult Content" categories did not concern an issue of public interest.  In that regard, FilmOn asserts "[b]asic classification and certification decisions that contain little to no analysis or opinion are not constitutionally protected activity within the ambit of the anti-SLAPP statute."  To support this charge, FilmOn relies primarily upon *All One God Faith, Inc. v. Organic & Sustainable Industry Standards, Inc.* (2010) 183 Cal.App.4th 1186 (*OASIS*).

In *OASIS*, a commercial trade association sought to develop an "organic" certification for use by its members with their personal care products.  (*OASIS, supra,* 183 Cal.App.4th at p. 1193.)  A nonmember competitor sued, arguing the certification was contrary to federal standards for the term "organic," and thus labeling the members' products with the association's

13

" 'OASIS Organic' " seal would constitute deceptive advertising and an unfair business practice. (*Id.* at pp. 1193-1194, 1195.) The trade association filed an anti-SLAPP motion, which the trial court denied on the ground that the association failed to meet its threshold burden of demonstrating the challenged conduct concerned a public issue under the anti-SLAPP statute. (*Id.* at p. 1197.) The trade association appealed, and the appellate court affirmed.

The *OASIS* court began by addressing what activity gave rise to the plaintiff's claims. (*OASIS, supra,* 183 Cal.App.4th at p. 1202.) The court rejected the association's assertion that it was "sued for its 'opinion as to what makes a personal care product "organic" ' or 'the articulation and dissemination of the ["OASIS Organic"] standard.' " (*Ibid.*) Rather, the court determined the association was sued for "authoriz[ing] its members . . . to use the 'OASIS Organic' seal on their products in the marketplace." (*Ibid.*) This distinction proved critical to the court's resolution of whether the challenged conduct concerned an issue of public interest. While the *OASIS* court acknowledged the association's "articulation and dissemination of a standard regarding what makes a personal care product 'organic' may constitute an exercise of its right of free speech on a matter of public concern," the court rejected the association's implicit assertion that "certification of commercial products—the activities that [the plaintiff] seeks to enjoin—are in furtherance of that speech." (*Id.* at p. 1203.) In reaching this conclusion, the court observed that the protected conduct—the articulation of an "organic" standard—would "necessarily be complete *before* [the association] certifie[d] any member product." (*Id.* at p. 1203.) Thus, the court reasoned the challenged conduct—authorizing members to use its " 'OASIS Organic' seal"—was unnecessary to the act of articulating the standard and, therefore, was not in

14

furtherance of the association's exercise of free speech in connection with a public issue. (*Id.* at p. 1204.)

*OASIS* does not support FilmOn's contention. In *OASIS*, the association's act of placing its seal on a member product communicated nothing about what standards should be used to judge whether a personal care product is organic. (*OASIS, supra,* 183 Cal.App.4th at p. 1204.) In this case, FilmOn's business tort and trade libel claims are based *entirely* upon the message communicated by DoubleVerify's "tags." Indeed, it is only because advertisers understand the message within DoubleVerify's tags that FilmOn can claim the tags caused "advertising partners to pull advertising from FilmOn's websites." And, it is only because advertisers understand that the public is interested in whether adult content or copyright infringing material appears on a website that these companies would modify their advertising strategies based on DoubleVerify's tags. Unlike the unfair business practice claims in *OASIS*, FilmOn's allegations are directly based on the content of DoubleVerify's communications. The trial court correctly found the claims were based upon conduct in furtherance of DoubleVerify's right of free speech.

We also agree with the court's finding that the conduct concerned issues of interest to the public. Apart from the advertisers' apparent view of whether the public has an interest in these issues, DoubleVerify's evidence demonstrated that the presence of adult content on the Internet generally, as well as copyright infringing content on FilmOn's websites specifically, has been the subject of numerous press reports, regulatory actions, and federal lawsuits. Among the publications that reported specifically about FilmOn's legal entanglements were readily recognizable press outlets such as *Fortune*, *Business Insider*, and *Hollywood Reporter*. Matters receiving extensive

15

media coverage through widely distributed news or entertainment outlets are, by definition, matters of which the public has an interest.  (See, e.g., *Annette F. v. Sharon S., supra,* 119 Cal.App.4th at p. 1162 [press coverage of court decision concerning second-parent adoption by lesbian couple was a matter of public interest]; *Church of Scientology, supra,* 42 Cal.App.4th at p. 651 ["media coverage" established "Church [of Scientology] is a matter of public interest"].)  Likewise, the public debate over legislation to curb children's exposure to adult and sexually explicit media content demonstrates DoubleVerify's reports identifying such content on FilmOn's websites concerned an issue of public interest.  (See, e.g., fn. 3, *ante*.)

Common sense and experience also support the trial court's conclusion that these reports addressed matters of interest to the public.  As noted, some courts have observed that there is no need to expressly define "public interest" under the anti-SLAPP statute, because courts applying their common sense and experience " ' "will, or should, know a public concern when they see it." ' " (*Briggs, supra,* 19 Cal.4th at p. 1122, fn. 9.)  The trial court did so here.  As the court pointed out, the Motion Picture Association of America (MPAA) engages in conduct quite similar to DoubleVerify's activities by rating movies concerning their level of adult content; and the MPAA does so, because the public cares about the issue.  Similarly, the court reasonably recognized that federal district courts have entered injunctions against FilmOn's business because the public has an interest in the prevention of copyright infringement.

The trial court did not err in concluding FilmOn sued DoubleVerify for engaging in conduct in furtherance its right of free speech in connection with an issue of public interest.

4. *DoubleVerify's Confidential Reports Are Entitled to Anti-SLAPP Protection*

Alternatively, FilmOn argues DoubleVerify's reports could not have concerned an issue of public interest because they "were made entirely in private, to individual companies that subscribed to its services." FilmOn acknowledges that "preventing copyright infringement and children's access to adult content are issues of public concern," but argues DoubleVerify's conduct does not embrace these issues because its "reports are private statements made in a commercial context." We disagree.

FilmOn's argument rests on the flawed premise that to qualify as speech in connection with an issue of public interest, "the statement must itself contribute to the public debate." Though the public interest requirement "means that *in many cases* the statement or conduct will be a part of a public debate" (*Wilbanks, supra,* 121 Cal.App.4th at p. 898, italics added), an ongoing public debate is not a *sine qua non* for protection under the anti-SLAPP statute where the statement concerns an issue of widespread public interest. (See *Cross, supra,* 197 Cal.App.4th at p. 381, fn. 15.) To judicially impose such a requirement would impermissibly "narrow[ ] the meaning of 'public interest' despite the Legislature's mandate to interpret the anti-SLAPP statute broadly." (*Ibid*; see § 425.16, subd. (a); *Nygård, supra,* 159 Cal.App.4th at p. 1039.)

In *Cross*, the court rejected the proposition, first articulated in *Wilbanks*, that "even statements directly concerning issues of *widespread* public interest—i.e., the *Rivero* third category—do not qualify for protection unless there is some existing ongoing controversy, dispute, debate, or discussion about those issues *and* the statements contribute to that debate." (*Cross, supra,* 197 Cal.App.4th at p. 381, fn. 15, citing *Wilbanks, supra,* 121 Cal.App.4th at p. 898.) The *Wilbanks* court ruled that "it is

17

not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate." (*Wilbanks,* at p. 898.) But, as the *Cross* court explained, "the *Wilbanks* court provided no analysis" for this ruling, and "simply cited, without further discussion," three cases that neither involved statements concerning issues of widespread public interest, nor suggested that this category should be further restricted. (*Cross,* at p. 381, fn. 15 [discussing, *Du Charme, Consumer Justice Center v. Trimedica International, Inc.* (2003) 107 Cal.App.4th 595 (*Consumer Justice Center*), and *Rivero*.)[5]

---

[5]     In *Du Charme*, a union local posted a notice on its website informing members that a former business manager had previously been removed for mismanagement. (*Du Charme, supra,* 110 Cal.App.4th at pp. 113–114.) The *Du Charme* court ruled that "to satisfy the public issue/issue of public interest requirement . . . , *in cases where the issue is not of interest to the public at large*, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance." (*Id.* at p. 119, first italics added.) In *Consumer Justice Center*, the subject false advertising claim did not concern the general topic of herbal supplement efficacy, but rather alleged that the defendant "misrepresented the specific properties and benefits" of its particular herbal supplement. (*Consumer Justice Center, supra,* 107 Cal.App.4th at p. 601.) And, in *Rivero*, the subject defamation claim was based upon a union's statements about the supervision of eight custodians, not the issue of unlawful workplace activity generally. (*Rivero, supra,* 105 Cal.App.4th at p. 924.)

18

Moreover, FilmOn's insistence that statements concerning issues of widespread interest must also contribute to a public debate is contrary to the legislative mandate to broadly construe the anti-SLAPP statute in favor of protection. As the *Cross* court observed, the *Wilbanks* rule is "akin to the rule promulgated in [*Zhao v. Wong*] that narrowed 'public issue' to statements 'occupying "the highest rung of the hierarchy [*sic*] of First Amendment values," that is, to speech pertaining to the exercise of democratic self-government.' " (*Cross, supra,* 197 Cal.App.4th at pp. 381-382, fn. 15; *Zhao v. Wong* (1996) 48 Cal.App.4th 1114, 1129, disapproved in *Briggs, supra,* 19 Cal.4th at p. 1123, fn. 10.) This narrow interpretation, the *Cross* court explained, was rejected by the Legislature when it "amended the anti-SLAPP statute to require that it be broadly construed in response to *Zhao*." (*Cross,* at pp. 381-382, fn. 15, citing *Nygård, supra,* 159 Cal.App.4th at p. 1039; see also *Briggs,* at p. 1120 ["The Assembly Judiciary Committee's analysis of the amendatory legislation confirms the amendment was intended specifically to overrule *Zhao v. Wong*"].) In view of the mandate for broad construction, we agree with the *Cross* court that, where a statement concerns an issue of widespread public interest, it need not also contribute in some manner to a public debate. (See *Cross,* at pp. 381-382, fn. 15; see also *Tamkin v. CBS Broadcasting, Inc.* (2011) 193 Cal.App.4th 133, 143 [where public was "demonstrably interested in the creation and broadcasting of [a television] episode," act of using plaintiffs' names in early draft of episode script qualified for anti-SLAPP protection, even in absence of a public debate].)

In any event, FilmOn's implicit contention that the challenged activity must occur in public view, and thus advance a public debate, cannot be squared with the rule that the anti-SLAPP statute "applies to private communications concerning

issues of public interest." (*Terry, supra,* 131 Cal.App.4th at p. 1546.)  Whether a statement concerns an issue of public interest depends on the content of the statement, not the statement's speaker or audience.  Thus, in *Terry*, the court held statements alleging the plaintiffs had an inappropriate sexual relationship with a minor church member were entitled to anti-SLAPP protection, notwithstanding that the statements were made in an internal investigation report disseminated in closed meetings with the parents of youth group members.  (*Id.,* at pp. 1543, 1545-1547.)  Likewise, in *Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, the court held that statements made privately by parents to the coordinator of a youth basketball program about a volunteer coach were protected by the anti-SLAPP statute because the statements concerned issues of public interest, such as "safety in youth sports" and "problem coaches/problem parents in youth sports."  (*Id.* at pp. 465, 468.)

So too here; it is irrelevant that DoubleVerify made its reports confidentially to its subscribers, because the contents of those reports concerned issues of widespread interest to the public.  Thus, for example, if an "R" rating for adult content is a matter of "public interest" when communicated by the MPAA to the public at large, it remains a matter of public interest when communicated by DoubleVerify in confidential reports to its clients.  Likewise, if FilmOn's alleged copyright infringement is an issue of public interest when reported by the press, it remains so when included in DoubleVerify's confidential reports.  Neither the identity of the speaker nor the identity of the audience affects the content of the communication, or whether that content concerns an issue of public interest.  The trial court correctly found that DoubleVerify made a threshold showing that the challenged causes of action arose from protected activity.

20

**DISPOSITION**

The order is affirmed.  DoubleVerify is entitled to its costs.



JOHNSON (MICHAEL), J.*


We concur:



EDMON, P. J.



ALDRICH, J.

---

*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 7/25/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FILMON.COM, | B264074 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC561987) |
| v. | |
| DOUBLEVERIFY, INC. | ORDER CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN JUDGMENT] |
| Defendant and Respondent. | |

THE COURT:

   The opinion in the above-entitled matter filed on June 29, 2017, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports.

   [There is no change in the judgment.]

---

JOHNSON (MICHAEL), J.*      EDMON, P. J.      ALDRICH, J.

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.