Filed 4/2/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DONNA SUE WORKMAN, as Trustee, etc., <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> PAUL COLICHMAN et al., <br><br>     Defendants and Appellants. | B285945 <br><br> (Los Angeles County Super. Ct. No. SC127446) |
| DONNA SUE WORKMAN, as Trustee, etc., <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> PAUL COLICHMAN et al., <br><br>     Defendants and Respondents. | B288322 <br><br> (Los Angeles County Super. Ct. No. SC127446) |

APPEAL from an order of the Superior Court of Los Angeles County, Gerald Rosenberg, Judge. Affirmed in part; reversed in part with directions.

Lavely & Singer, Brian G. Wolf, Todd S. Eagan and David B. Jonelis, for Defendants and Appellants.

Stern and Goldberg, Alan N. Goldberg and Peter Tran, for Plaintiff and Respondent.

## INTRODUCTION

In providing an example of when Code of Civil Procedure, section 425.16, the anti-SLAPP statute,[1] would not be applicable, one case offered this hypothetical: "Blackacre sells a house to Whiteacre, and Whiteacre sues, claiming defendant misrepresented the square footage. Blackacre brings a special motion to strike, claiming his speech involves a matter of public interest, because millions of Americans live in houses and buy and sell houses. . . . [A]pplying the anti-SLAPP statute in such a case would be absurd." (*Consumer Justice Center v. Trimedica International, Inc.* (2003) 107 Cal.App.4th 595, 601 (*Consumer Justice*).)

This case is only slightly more complex than the Blackacre hypothetical. Here, plaintiff Donna Sue Workman placed a house on the market for sale, found a buyer, and entered escrow. Defendants Paul Colichman and David Millbern, residents of a neighboring property, caused the sale to fall through when they told Workman's real estate agent in an email that they planned

---

[1]"SLAPP" is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.) All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

to construct an addition to their house that would interfere with the sweeping views from Workman's house. Workman sued defendants, alleging that their statement was false because no construction was planned, and their email to the real estate agent was intended to interfere with the pending sale. Defendants brought a special motion to strike, claiming their email involved a matter of public interest: representations to the public in the advertising materials about the views from Workman's house. The trial court denied the defendants' motion, and they appealed.

A special motion to strike is no more applicable here than it was in the Blackacre hypothetical: Information about the views from a private residence affecting only those directly interested in buying or selling that house is not an issue of public interest. The trial court's denial of defendants' special motion to strike is affirmed.

After the trial court denied defendant's special motion to strike, Workman filed a motion for attorney fees, asserting that the anti-SLAPP motion was frivolous and solely intended to delay the litigation. Defendants opposed the motion on the basis that the anti-SLAPP motion was not frivolous. The trial court denied the motion without articulating its reasoning, and Workman appealed.[2] We find that Workman was entitled to attorney fees under section 426.15, and reverse the court's ruling.

Workman also filed a motion for sanctions on appeal, asserting that defendants' appeal from their anti-SLAPP motion was frivolous and intended to delay the litigation. We requested a response from defendants. We find that sanctions to both Workman and the court are warranted. We therefore grant

---

[2]We granted Workman's motion to consolidate the appeals.

3

Workman's motion, and order sanctions in the amount of $35,985.00 to be paid to Workman, and $8,500.00 to be paid to the clerk of this court.

**ANTI-SLAPP**

A. **Background**

1. *Workman's complaint*

Workman alleged in her complaint that she was trustee of two family trusts that owned real property on a hill in the Bel Air neighborhood of Los Angeles (the trust property). A neighboring house on the same street was owned by Colichman and his trust. Workman alleged that the trust property has a higher elevation than Colichman's property, which "allows it to have sweeping views of Century City, Westwood, and downtown Los Angeles from several vantage points throughout the house." Workman alleged that the views from the house "are a substantial factor in its value." She also stated, "The corridor of these views runs directly over the Neighbor Property."

Workman listed the trust property for sale with real estate broker Kimberly Doner and Teles Properties for $2,750,000. Doner held an open house, and neighbors Colichman and Millbern attended.[3] They told Doner that they wanted to buy the trust property but could not afford it. They also said they were considering adding a second story and rooftop deck to their property.

Workman received multiple offers for the trust property, and after some negotiation, entered into an agreement to sell it

---

[3]Millbern's connection to the property and other parties is unclear in the complaint and throughout the record, but references to Colichman's property as "their" home suggest that Millbern lived at Colichman's property.

4

for $3,053,000.  Escrow was opened on March 20, 2017.  The same day, Colichman emailed Doner, stating that he and Millbern intended to construct a second story and rooftop deck onto their home, which would substantially interfere with the views from the trust property.  The body of the email, which was attached as an exhibit to the complaint, states, "I wanted to let you know that David and I have decided to proceed with adding a second story and deck (on the roof of that second story) to our home . . . .  We mentioned this to you in person last week at your open house, but thought it important to put it in writing.  As I am sure you are fielding offers as of this date on [the trust] property . . . , it would be critical to disclose this fact to all prospective buyers, as it will impact their view.  I have copied my attorney on this email to make it clear that this disclosure was made to you."

Workman alleged that defendants did not actually intend to build upon their property, and this representation was made "solely to interfere with the sale of the Trust Property, so that Defendants Colichman and Millbern and/or one of their 'friends' could purchase the Trust Property at a substantial discount from its fair market value."  Workman also alleged that defendants' actions were intended to interfere with their contract to sell the trust property.  She asserted that as of the date of the complaint, defendants had not applied for or obtained any permits regarding construction on their property.

Doner provided Colichman's email to the potential buyer's broker.  The broker attempted to find out more from Colichman, but Colichman repeatedly said he was too busy to talk about it and refused to provide the name of any architect involved in the construction plans.  The buyer backed out of the sale, which, according to his broker, was a result of Colichman's

representation that the construction would interfere with the views from the trust property.

Shortly thereafter, Workman received an offer to buy the property for $2,200,000 from a couple she believed were friends or acquaintances of Colichman. The email with the offer stated that the potential buyers were aware of defendants' construction plans and were willing to buy the property nonetheless. Workman did not name the potential buyers as defendants, but stated in her complaint that she "reserves the right to do so if initial discovery confirms they are conspiring" with the other defendants.

Workman asserted four causes of action: Intentional interference with contractual relations and prospective economic advantage, negligent interference with prospective economic advantage, conspiracy to defraud, and unfair business practices under Business & Professions Code section 17200, et seq. Workman prayed for damages "not less than the difference between the contract price of $3,053,000.00 and the amount ultimately received for the sale of the Trust Property," as well as punitive damages, costs, and injunctive relief barring defendants from interfering with the sale of the property. While the case was pending, the trust property sold for $2,635,000.

2. *Anti-SLAPP motion and opposition*

Defendants filed a special motion to strike under section 425.16—an anti-SLAPP motion. The anti-SLAPP statute "is intended to resolve quickly and relatively inexpensively meritless lawsuits that threaten free speech on matters of public interest." (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 639.) Section 425.16, subdivision (b)(1), provides, "A cause of action against a person

6

arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." As relevant here, an "act of that person in furtherance of the person's right of petition or free speech" includes "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4) (section 425.16(e)(4)).)

In their motion, defendants asserted that Workman's action was "frivolous on its face," and that it was "based solely on a single email" that "expresses a true statement of fact." They also contended that Workman's real estate agent, Doner, "was falsely and fraudulently representing to the public and potential purchasers of the property that the property had free and unencumbered views—which is a false and misleading statement should Defendants decide to proceed to exercise their legal right to add a second story to their home."

Defendants asserted that each cause of action in the complaint "is based solely on written representations by Defendants which are protected activity under Section 425.16(e)(4)." The email was "protected communication in furtherance of Defendants' right of free speech in connection with a public issue, inasmuch as it concerns real property rights and restrictions in the County of Los Angeles and the marketing of residential real estate to the public through false and misleading marketing materials." Defendants asserted that it was

7

"indisputable" that this was a "matter of public concern for purposes" of the anti-SLAPP law.  Defendants argued that their conduct fell under the definition of a "matter of public interest" in section 425.16(e)(4), because it involved the marketing of real estate to the public and fraud, which "impact a broad segment of society and thus relate to matters of consumer protection and public concern."

Defendants also asserted that the action had no probability of success, as Workman could not establish causation or damages because she "sold the Trust House for its fair market value instead of the fraudulently inflated value based on Plaintiff's false representation of the quality and characteristics ('expansive views') of the Trust House."  They asserted that Workman had been required to disclose defendants' right to build upon their property to any potential owner, even without defendants' email.  Defendants stated, "Plaintiff is suing because she was caught in the act of attempting to deceive the public" through marketing materials intended "to promote the sale of the Trust House at an inflated price."[4]

Workman opposed the motion, asserting that "this entirely private dispute" was not a matter of public interest and therefore did not fall under the parameters of the anti-SLAPP statute.  She also argued that a property seller had no duty to disclose public records or permits relating to off-site properties, and therefore defendants were incorrect that any representations about the property were deceitful.  In addition, Workman asserted that even if this were an issue of public interest, the anti-SLAPP motion should be denied because she could establish each

_____

[4]Defendants also filed a demurrer, which is not relevant to the issues on appeal.

8

element of her causes of action and therefore the action had a probability of success.

Workman submitted a declaration by Doner, the seller's agent for the property sale. Doner is Workman's niece; the prior owner of the trust property was Doner's grandmother. Doner's declaration reiterated the factual allegations of the complaint, including the open house, the offers, the escrow, the email from Colichman, and the buyer's withdrawal. She stated that despite strong initial interest in the house, after Colichman's email, interest in the property waned.

Doner's declaration discussed the receipt of the low, post-email offer for the house, and stated that she later learned that the buyers who submitted that offer "are friends and longtime business associates of Defendants Colichman and Millbern." After Workman made clear that she "would not be selling the Trust Property in the ballpark of the low price offered by [defendants'] 'friends,' [defendants] then modified their 'construction plans' to claim they only intended to build up a portion of their residence, and place a deck only on top of the first story of their residence." Doner then received an offer of $2.5 million from a different potential buyer, and eventually contracted to sell the property for $2,635,000. The sale was completed on July 24, 2017. Doner said that defendants also sent a letter to her employer accusing her of misrepresenting the trust property and disparaging defendants' property.

Defendants filed a reply supporting the motion and objections to Doner's declaration.

3. *Ruling*

The trial court issued a tentative ruling denying defendants' anti-SLAPP motion, stating, "This is a private

9

matter; not a public issue or an issue of public interest."  At the hearing, the court ruled on defendants' objections to Workman's evidence.  Defendants' counsel argued, "The marketing to the public for sale of residential real estate is highly regulated in the State of California. Marketing materials are highly regulated in the State of California; ergo, marketing materials are a matter of public concern."  The court asked, "Who's affected by that?  It's the potential buyer of that home . . . .  So it's really between the two of them."  Defense counsel responded that the "materials were marketed to the public at large," so "[t]his is not about one buyer or owner versus another."  Workman's counsel disagreed, stating that this was a private dispute between homeowners and a buyer, and nothing more.

The court denied defendants' anti-SLAPP motion, stating, "I don't believe that we have a matter of public concern here.  It's a private dispute."  The court also noted that "[t]he Motion may not be timely."  After a notice of ruling was served, defendants timely appealed.

## B.    Discussion

"Section 425.16, subdivision (b)(1) requires the trial court to engage in a two-step process when determining whether to grant a motion to strike.  First, it decides whether defendant has made a prima facie showing that the acts of which plaintiff complains were taken in furtherance of defendant's constitutional rights of petition or free speech in connection with a public issue.  If defendant satisfies this threshold burden, plaintiff must then demonstrate a reasonable probability of prevailing on the merits.  On appeal, we review these legal issues de novo." (*Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 111-112.)

Here, we find that defendants have not satisfied their threshold burden to demonstrate that their actions were connected to a public issue. We therefore do not address the second prong of the test. (See *Nam v. Regents of University of California* (2016) 1 Cal.App.5th 1176, 1185 ["If defendant fails to meet its burden, we need not assess plaintiff's likelihood of prevailing on the merits."].)

Workman's complaint focused on Colichman's email to Doner regarding defendants' purported plans to construct an addition to defendants' property that would interfere with the views from the trust property. Nevertheless, defendants' arguments focus entirely on different communications: representations Doner purportedly made about the trust property to potential buyers. Defendants assert that they met their initial burden under section 425.16 because Workman's claims "fall *squarely* within the purview of 425.16(e)(4), as they relate to matters of <u>consumer protection</u> and <u>public concern</u>." They posit that "there can be no doubt that alleged fraudulent practices of a real estate broker in marketing real property to the public implicate matters of consumer protection and are a topic of public interest." Defendants state that "because all of [Workman's] claims are based on" Colichman's email "in connection with a *matter of consumer protection* and *public interest* relating to an industry that is *heavily regulated*, [defendants] clearly met their burden of showing that the alleged conduct falls within Section 425.16(e)(4)."

To fall under section 425.16(e)(4), "the conduct must be in connection with an issue of public interest." (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132 (*Weinberg*).) "[A] matter of public interest should be something of concern to a substantial

11

number of people," and "the assertion of a broad and amorphous public interest is not sufficient." (*Ibid*.) "In evaluating the first prong of the anti-SLAPP statute, we must focus on 'the specific nature of the speech rather than the generalities that might be abstracted from it.'" (*World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.* (2009) 172 Cal.App.4th 1561, 1570 (*World Financial*); see also *Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.App.4th 26, 34 (*Commonwealth*).) To be considered an issue of public interest, the communication must "go beyond the parochial particulars of the given parties." (*Commonwealth*, *supra*, 110 Cal.App.4th at p. 34.)

Defendants assert that the public interest at issue here is the "fraudulent practices of a real estate broker in marketing real property to the public." This contention vastly overstates the issue in this case. Colichman's communication to Doner was about defendants' construction plans on their own home and the potential effects on the views from the neighboring trust property. Defendants' argument that this case does not involve a specific, private transaction, and instead involves fraud in the marketing of real estate in general, is not supported by the record or applicable authority.

"'The fact that "a broad and amorphous public interest" can be connected to a specific dispute is not sufficient to meet the statutory requirements' of the anti-SLAPP statute. [Citation.] By focusing on society's general interest in the subject matter of the dispute instead of the specific speech or conduct upon which the complaint is based, defendants resort to the oft-rejected, so-called 'synecdoche theory of public issue in the anti-SLAPP statute,' where '[t]he part [is considered] synonymous with the

12

greater whole.'" (*World Financial, supra*, 172 Cal.App.4th at p. 1570.)

Defendants' claims are similar to those rejected in *Bikkina v. Mahadevan* (2015) 241 Cal.App.4th 70 (*Bikkina*). In that case, a former doctoral student, Bikkina, sued a professor, Mahadevan, relating to false statements Mahadevan made about Bikkina's published research in what the Court of Appeal called "Papers 1 and 2." Bikkina alleged that Mahadevan interfered with his doctoral work at the university, and after Bikkina completed his Ph.D. program and began working at a laboratory (LBNL), "Mahadevan contacted one of Bikkina's superiors to inform him that Bikkina had falsified the data in Papers 1 and 2. On August 30, 2013, Mahadevan made a presentation at LBNL and told Bikkina's colleagues that Bikkina had published a paper using false data. Mahadevan also contacted LBNL's research and institutional integrity officer to claim Bikkina had falsified data." (*Id.* at p. 76.)

In response to Bikkina's lawsuit, Mahadevan filed an anti-SLAPP motion, asserting that his "criticism of Bikkina's data was on a topic of public interest because it relates to 'one of the most important issues of our time—climate change and greenhouse gases.'" (*Bikkina, supra,* 241 Cal.App.4th at p. 82.) The court rejected this argument: "Mahadevan's statements were made to a small, specific audience: University faculty and LBNL scientists. His broad assertions about the public interest in climate change are not closely connected to his actual statements. . . . Simply because carbon sequestration is related to climate change, it does not convert his technical objections into a topic of public interest. Mahadevan's speech was a private campaign to discredit another scientist at the University, and later at LBNL,

13

and not part of a public debate on a broader issue of public interest." (*Id.* at pp. 82-83.)  The court also stated, "[T]he specific nature of the speech was about falsified data and plagiarism in two scientific papers, not about global warming." (*Id.* at p. 85.) Although there is public interest in the general topic of climate change, "there was no public interest in the private dispute between Mahadevan and Bikkina about data in papers on carbon sequestration." (*Id.* at p. 83.)

The *Bikkina* court relied on *Weinberg v. Feisel, supra*, 110 Cal.App.4th 1122, a case that the trial court cited below in denying defendants' motion.  In *Weinberg*, the plaintiff and defendant were "aficionados of token collecting." (*Id.* at p. 1127.) After one of the defendant's tokens went missing at a token show, the defendant accused the plaintiff of stealing it.  The defendant sent multiple letters to other token collectors identifying the plaintiff as the thief and accusing the plaintiff of chronic lying. (*Id.* at pp. 1128, 1129.)  The defendant also convinced a token collector group to vote that the plaintiff could not attend an upcoming token "jamboree" or related events. (*Id.* at p. 1129.) The plaintiff was a retired police officer, and the defendant contacted the sergeant who coordinated various rights and responsibilities of retired officers (such as concealed weapons permits) to complain that the plaintiff had a violent temper and caused other collectors to fear for their lives. (*Ibid.*)

The plaintiff filed a complaint for libel and related causes of action. (*Weinberg, supra*, 110 Cal.App.4th at p. 1129.)  The defendant filed an anti-SLAPP motion, which the trial court denied.  The Court of Appeal affirmed, finding that "Defendant has failed to demonstrate that his dispute with plaintiff was anything other than a private dispute between private parties."

14

(*Id*. at p. 1134.)  The defendant asserted that his speech related to the plaintiff's allegedly criminal conduct, and criminal activity is always a matter of public interest.  The court disagreed.  "[I]t is alleged that defendant began a private campaign, so to speak, to discredit plaintiff in the eyes of a relatively small group of fellow collectors.  Since the record does not support a conclusion that plaintiff is a public figure or that he has thrust himself into any public issue, defendant's accusations against plaintiff related to what in effect was a private matter.  Under the circumstances, the fact that defendant accused plaintiff of criminal conduct did not make the accusations a matter of public interest."  (*Id*. at p. 1135.)

Many other cases have found that communications to small, limited-interest groups do not meet the "public interest" requirement of section 425.16(e)(4).  In *Rivero v. American Federation of State, County, and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, for example, a union published information that a supervisor had engaged in illegal activity.  The supervisor sued several defendants, including the union, for libel and related causes of action.  (*Id*. at p. 917.)  The union asserted that its accusations implicated a public issue: unlawful workplace activity.  The Court of Appeal disagreed.  "[T]he only individuals directly involved in and affected by the situation were Rivero and the eight custodians [he supervised]. Rivero's supervision of those eight individuals is hardly a matter of public interest."  (*Id*. at p. 924.)  The court also said, "[U]nlawful workplace activity below some threshold level of significance is not an issue of public interest, even though it implicates a public policy."  (*Ibid*.)

15

Similarly, in *Commonwealth, supra,* 110 Cal.App.4th 26, a telemarketer took shareholders' information from the plaintiff corporation, and used it to solicit business regarding "investigating" investment scams. The Court of Appeal held although investment scams in general can be a public concern, the specific communication was not made in connection with a public issue: "[T]he specific speech here was a telemarketing pitch for a particular service marketed to a very few number of people. Nor can it be said that the telemarketing statements were about an issue of widespread public interest. The speech was about [the defendant's] services, not about investment scams in general." (*Id.* at p. 34.)

*Commonwealth* relied on *Consumer Justice, supra,* 107 Cal.App.4th 595. In that case, the plaintiffs sued the defendant for false advertising relating to "Grobust," marketed as "The All–Natural Way To A Fuller, More Beautiful Bust!" (*Id.* at p. 598.) The defendant filed an anti-SLAPP motion, asserting that "'herbal dietary supplements and other forms of complementary medicine are the subject of public interest.'" (*Id.* at p. 601.) The court rejected this argument, stating that the defendant's "speech is not about herbal supplements in general. It is commercial speech about the specific properties and efficacy of a particular product, Grobust. If we were to accept [the defendant's] argument that we should examine the nature of the speech in terms of generalities instead of specifics, then nearly any claim could be sufficiently abstracted to fall within the anti-SLAPP statute." (*Ibid.*)

The court then discussed the Blackacre hypothetical cited at the beginning of this opinion: "[The plaintiff] suggests a hypothetical regarding false statements made in the course of a

16

real property sale. Blackacre sells a house to Whiteacre, and Whiteacre sues, claiming the defendant misrepresented the square footage. Blackacre brings a special motion to strike, claiming his speech involves a matter of public interest, because millions of Americans live in houses and buy and sell houses. [The plaintiff] correctly suggests that applying the anti-SLAPP statute in such a case would be absurd." (*Consumer Justice, supra,* 107 Cal.App.4th at p. 601.) The court rejected the defendant's claim that its advertisements involved an issue of public interest.

Here, defendants assert that this case involves "issues of consumer protection and fraud, which necessarily impact a broad segment of society" and are therefore matters of public interest. They cite *Chaker v. Mateo* (2012) 209 Cal.App.4th 1138, in which the defendants posted derogatory reviews about the plaintiff's business on consumer review websites. The Court of Appeal held that the statements implicated matters of public interest, in that the defendants' comments about the plaintiff's "character and business practices plainly fall within in the rubric of consumer information about [the plaintiff's] business and were intended to serve as a warning to consumers about his trustworthiness." (*Id.* at p. 1146.) In that case, however, the court analyzed the issue under section 425.16, subdivision (e)(3), which addresses "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." Here, there is no dispute that defendants' communication was not in a public place, and defendants do not assert that subdivision (e)(3) applies here.

Defendants also cite *Carver v. Bonds* (2005) 135 Cal.App.4th 328, in which a doctor sued a newspaper publisher

17

and others following publication of an unflattering article that said the doctor falsely claimed to have treated certain professional athletes. The court held that the communication involved the public interest in section 425.16(e)(4): "The article warned readers not to rely on doctors' ostensible experience treating professional athletes, and told what it described as 'a cautionary tale' of plaintiff exaggerating that experience to market his practice. Since the statements at issue served as a warning against plaintiff's method of self-promotion, and were provided along with other information to assist patients in choosing doctors, the statements involved a matter of public concern." (*Id*. at p. 344.) The communication at issue in *Carver* was public (published in a newspaper), and involved reporting about the interactions (and lack of interactions) between a doctor and multiple celebrity athletes and professional sports teams. The inclusion of celebrity issues alone may implicate the public interest aspect of section 425.16(e)(4). (See *Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1254 ("'celebrity gossip' [is] properly considered, under established case law, as statements in connection with an issue of public interest."].) Thus, *Carver* is not factually similar to this case, which is far more similar to *Weinberg* and *Bikkina*'s limited communications to small groups of interested people.

Defendants also contend that because real estate is a regulated industry, and the "very purpose of real estate licensing is to protect the public," their communication involved the public interest. They cite *Cross v. Cooper* (2011) 197 Cal.App.4th 357 (*Cross*), which they assert involves facts "remarkably similar to the facts at bar." In *Cross*, a property owner alleged that renters on the property interfered with a pending sale of the property by

18

disclosing to a prospective buyer's agent that a registered sex offender lived directly across the street.  (*Id*. at p. 366.) Following cases that discussed the public interest in preventing inappropriate relationships between adults and children, the court said, "Preventing child sexual abuse and protecting children from sexual predators are issues of widespread public interest.  Thus, insofar as [the renter's] disclosure served those interests by alerting prospective buyers of the potential risk to children posed by a registered sex offender who lived nearby, his conduct involved a private communication directly related to an issue of considerable interest to the general public and qualify for anti-SLAPP protection."  (*Id*. at p. 375.) The court also discussed laws and policies in place regarding registered sex offenders, and noted the "heightened concern about the potential dangers posed by convicted sex offenders and strong and widespread public interest in knowing the location of registered sex offenders."  (*Id*. at p. 377.)

The *Cross* court acknowledged that cases such as *Rivero* and *Consumer Justice* hold that a "broad and amorphous public interest" is insufficient to warrant protection under section 425.16.  (*Id*. at p. 378.)  The court distinguished the facts before it:  "This case, however, does not involve some broad and amorphous public interest in an issue that one might rationally abstract from [the renter's] conversation.  As noted, the conversation involved the location of a registered sex offender, a subject specifically and directly related to an issue of compelling and widespread interest."  (*Id*. at p. 379.)  The court also rejected the argument that the information affected only a small number of people, such as the union members in *Rivero*:  "In particular, the termination of union personnel in . . . *Rivero* raised issues

19

that only union members would be interested in . . . .  Here, however, the disclosure about the nearby offender directly implicated issues concerning the protection of people, especially children, from sexual offenders and the location of registered offenders—i.e., issues that would be of interest to most people, especially those who are living in or considering moving to the area."  (*Id*. at p. 382.)

In this case, by contrast, there is no issue of widespread public concern.  Defendants' communication involved construction plans for their own property, with the suggestion that their plans may impact the views from the trust property.  The views from a private residence do not involve a matter of public concern.  Defendants' attempt to characterize this private dispute as a matter of public interest is not supported by any authority.  The trial court was correct in denying defendants' anti-SLAPP motion.

## WORKMAN'S MOTION FOR ATTORNEY FEES

### A.  Background

After the court denied defendants' anti-SLAPP motion, Workman filed a motion for attorney fees under section 425.16, subdivision (c)(1), which states, "If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5."

Workman asserted in her motion that defendants' anti-SLAPP motion "was totally and completely without merit.  Defendants could not even meet the initial threshold of the Anti-SLAPP statute, and it was clearly filed for purposes of delay."  Workman argued that the motion was without merit because it

did not involve an issue of public interest. They noted that although the anti-SLAPP motion "cited or referenced several cases," it "only discussed two cases involving the sexual molestation of minors," and "neither case was even remotely on point." Workman also noted that the motion was not timely, and therefore lacked merit on that basis as well.

As for evidence of delay, Workman noted that the lawsuit focused on defendants' attempts to interfere with the sale of the trust property, and defendants had attempted to interfere with Doner's employment by sending a disparaging letter to her employer. Workman contended that the anti-SLAPP motion was an extension of defendants' campaign of harassment and intimidation.

Workman's attorney, Alan N. Goldberg, submitted a declaration in support of the motion. He stated that based on the date of service of the complaint, defendants' response to the complaint was due on June 19, 2017. Defendants requested a 15-day extension, and Goldberg agreed. Before defendants' answer was due, Goldberg and Mark Share, defendants' counsel, considered resolving the case by mediation, and "discussed potential mediators and possible Mediation dates and we agreed to attempt to complete a Mediation by September 10, 2017." Goldberg prepared a stipulation and sent it to Share. Share responded that he wanted the stipulation to include an extension of time to file an anti-SLAPP motion. Goldberg refused the request, stating in his declaration, "I felt it made little sense to schedule a Mediation with that issue unresolved." The parties then signed a stipulation, which did not include an explicit extension for an anti-SLAPP motion, providing defendants a 70-day extension to "file their response to the Complaint."

Goldberg stated in his declaration, "After the Stipulation was submitted, I made numerous efforts to contact Mr. Share to select a mediator and schedule a Mediation. However, Mr. Share did not respond to my initial request for nearly 3 weeks . . . ." He continued, "We finally agreed on a Mediator on August 14, 2017, and on that date we were provided with six (6) dates of availability in October 2017 by ADR Services." A week later at a case management conference, "Mr. Share advised the court that none of those dates will work." Goldberg stated, "Given that Mr. Share had not cooperated in scheduling a Mediation, we served written discovery on Defendant Colichman on August 22, 2017. We also noticed the Deposition of [other witnesses]."

On September 8, 2017, the parties agreed to hold the mediation on November 21. On September 14, defendants filed their anti-SLAPP motion, thus staying all discovery.[5] On October 18, the court denied defendants' anti-SLAPP motion. On October 24, defendants filed a notice of appeal, and filed a separate notice of stay of proceedings due to the appeal.[6] On October 25, defendants unilaterally cancelled the scheduled mediation in a letter.

Workman requested attorney fees in the amount of $19,780.00, which included hourly rates for attorneys and filing fees.

---

[5]Upon the filing of an anti-SLAPP motion, "[a]ll discovery proceedings in the action shall be stayed" unless the court orders otherwise. (§ 425.16, subd. (g).)

[6]"[S]ection 916 stays all further proceedings on the merits during the pendency of an appeal from the denial of an anti-SLAPP motion." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 194.)

Defendants opposed the motion for attorney fees, arguing in part that "it would be absurd for this Court to hear Plaintiff's motion seeking an award of fees related to this Court's Ruling while it is on appeal" because the ruling could be reversed. Defendants also asserted that "appeal of the denial of an anti-SLAPP motion operates to automatically stay all further trial court proceedings." Defendants stated in a heading that their motion was "neither 'totally and completely without merit,' nor brought for the 'sole' purpose of harassment." However, defendants did not address Workman's assertion that the motion was brought for purposes of delay, and they did not submit any evidence, such as an attorney declaration, addressing the mediation and timing issues discussed in Goldberg's declaration.

As to whether the anti-SLAPP motion had merit, defendants asserted that "Plaintiff effectively contends that she was entitled to deceive the public in advertising materials published to the public . . . to lure unsuspecting buyers to purchase" the trust property. They contended, "Defendants' position in the anti-SLAPP Motion was that the efforts by a licensed realtor to intentionally deceive the potential buying public online and in the MLS regarding characteristics of real property located in California constituted an issue of public concern, and as such Defendants' anti-SLAPP Motion was well-founded and was by no means totally and completely without merit or solely for purposes of delay."

In her reply, Workman noted that defendants had not challenged the amount of attorney fees requested, and had presented no evidence or argument suggesting that the motion had not been brought for purposes of delay.

23

Before the hearing on the motion, the court issued a tentative ruling that stated, in its entirety, "Plaintiffs' Motion for SLAPP Fees against Defendants Paul Colichman and David Millbern is denied. [¶] In order to prevail on the Motion, the Court must find that the motion to strike is 'frivolous or is solely intended to cause unnecessary delay.'" At the hearing, the court heard argument from both parties, and without stating any additional reasoning on the record, stated, "The court is going to adopt its tentative. That will be the ruling of the court."

Workman timely appealed.[7]

## B.    Discussion

We review an order on a request for attorney fees under section 425.16 for abuse of discretion. (*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 450.) "A ruling amounts to an abuse of discretion when it exceeds the bounds of reason, and the burden is on the party complaining to establish that discretion was abused." (*Id*. at p. 450.) While we review the trial court's determination for an abuse of discretion, if a motion is determined to be frivolous, an award of attorney fees is mandatory." (*L.A. Taxi Cooperative, Inc. v. The Independent Taxi Owners Assn. of Los Angeles* (2015) 239 Cal.App.4th 918, 932 (*L.A. Taxi*).)

_____

[7]The anti-SLAPP statute does not make clear that this is an appealable order, but "[i]n cases where, as here, the issue of whether the anti-SLAPP motion should have been granted is properly before the appellate court, it would be absurd to defer the issue of attorney fees until a future date, resulting in the probable waste of judicial resources. When the first issue is properly raised, appellate jurisdiction over both issues under section 425.16, subdivision (i) is proper." (*Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265, 275.)

24

Plaintiff asserts that the trial court abused its discretion because it was clear that this dispute did not involve an issue of public interest, and there was "ample evidence" that the anti-SLAPP motion was solely intended to cause delay. In their respondents' brief, defendants assert that the appeal was meritorious, repeating their arguments that section 425.16 applies. As was the case in the trial court, however, defendants do not address Workman's assertion that the motion was filed solely for delay, or the evidence supporting that assertion.

As we discussed above, the anti-SLAPP motion lacked merit. Defendants did not meet the threshold burden of demonstrating that the communication at issue in the complaint was made in furtherance of defendants' constitutional rights of free speech in connection with a public issue. Case law is abundantly clear that for section 425.16 to apply, "the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) Defendants' attempts to focus on Doner's purported representations to non-parties—communications not at issue in the complaint—is not supported by law. Moreover, no case supports defendants' claim that communications concerning the views from a private residence involve an issue of public interest. By contrast, many cases reject the type of "synecdoche theory" arguments defendants assert here, characterizing clearly private communications about a private dispute as an issue of public interest. As in the Blackacre hypothetical quoted at the beginning of this opinion, application of the anti-SLAPP statute to these facts would be "absurd." Thus, the anti-SLAPP motion was frivolous.

Moreover, the evidence that the anti-SLAPP motion was filed for purposes of delay was both persuasive and unopposed. First, defendants requested multiple extensions to respond to the Complaint, stating that they were interested in mediation. However, after taking advantage of those delays, they cancelled the mediation. Second, the anti-SLAPP motion was not filed until September 14, 2017—the very last day allowed under the stipulation, and four months after defendants were served with the complaint in May 2017. Pursuant to section 425.16, subdivision (f), a "special motion may be filed within 60 days of the service of the complaint," unless the court allows it to be filed later. The trial court noted that the motion may have been untimely, but it did not deny the motion on that basis. Third, Workman submitted additional evidence that defendants were not cooperating in moving the litigation forward, such as causing long delays in communication and scheduling the mediation. By contrast, after the anti-SLAPP motion was denied on October 18, 2017, defendants quickly filed their notice of appeal on October 24, and filed a notice of stay shortly thereafter.

Defendants made no effort to contradict this evidence. They did not assert that Goldberg's interpretation of events was mistaken, or argue that they did not intend to delay, or submit any additional facts to contradict Workman's arguments about delay. Indeed, they did not even assert that Workman's evidence was insufficient to establish intent to delay. Defendants simply ignored this evidence and argument, both in the trial court and on appeal.

Under these circumstances, an award of attorney fees was mandatory. In *L.A. Taxi, supra,* 239 Cal.App.4th 918, for example, the plaintiffs alleged that the defendants "created

[Internet] search advertisements that are false and deceptive, as consumers viewing the advertisements are led to believe they are being directed to plaintiffs' phone numbers or Web sites when they are actually directed to phone numbers and websites wholly owned and operated by defendants." (*Id*. at p. 921.) The defendants filed an anti-SLAPP motion, arguing that the Internet is a public forum, so their alleged wrongful conduct fell within the protection of the anti-SLAPP statute. (*Id*. at p. 923.) The plaintiffs opposed the motion on the basis that the anti-SLAPP statute does not protect purely commercial speech, and the court denied the motion. (*Id*. at pp. 923-924.) The trial court also denied the plaintiffs' request for attorney fees, finding that the anti-SLAPP motion was not "clearly frivolous." (*Id*. at pp. 924-925.)

This court sustained the denial of the motion, and held that the court erred in denying the plaintiffs' request for attorney fees. Regarding the attorney fees, we stated, "[I]t was well-established when defendants filed their motion that purely commercial speech is not protected under the anti-SLAPP statute," and defendants did not "provide any reasonable basis for arguing that their search advertisements were not purely commercial speech." (*L.A. Taxi, supra*, 239 Cal.App.4th at p. 933.) Thus, "no reasonable attorney could have concluded that the anti-SLAPP motion was well taken. Accordingly, an award of reasonable attorney fees and costs was mandatory under section 425.16, subdivision (c)." (*Ibid*.)

Similarly, in *Moore v. Shaw* (2004) 116 Cal.App.4th 182, the Court of Appeal held that the trial court erred in denying a successful plaintiff's request for attorney fees under section 425.16, subdivision (c)(1). In that case, a client retained an

attorney, Shaw, to perform estate planning services, including moving assets to and from various trusts. (*Id*. at p. 188.) After the client's death, the client's son sued several defendants, including attorney Shaw, alleging that family members had improperly converted trust assets to their own use. (*Id*. at p. 189.) The attorney filed an anti-SLAPP motion, contending that "the causes of action arose from Nancy Shaw's conduct in representing [the clients] and their exercise of the constitutional rights of freedom of speech and petition for redress of grievances in the context of the probate of the estates of [the decedents]." (*Id*. at p. 190.) The trial court denied the motion and the Court of Appeal affirmed, holding that drafting the trust agreement was not a protected activity under section 425.16. (*Id*. at pp. 195-197.)

The trial court denied the plaintiff's request for attorney fees, but the Court of Appeal reversed. It noted that a "determination of frivolousness requires a finding the anti-SLAPP 'motion is "totally and completely without merit" (§ 128.5, subd. (b)(2)), that is, "any reasonable attorney would agree such motion is totally devoid of merit."'" (*Moore, supra,* 116 Cal.App.4th at p. 199.) The court held that the "anti-SLAPP motion was frivolous and therefore must incur sanctions," because "Shaw failed to meet her threshold burden of establishing the challenged causes of action arose from protected activity." (*Ibid.*) The attorney's conduct "was not an act in furtherance of the right of petition or free speech in connection with a public issue, and therefore an anti-SLAPP motion did not lie." (*Ibid.*) The court concluded, "Because Nancy Shaw's underlying conduct clearly did not constitute an act in furtherance of the right to petition or free speech in connection

28

with a public issue, as those terms are defined in section 425.16, any reasonable attorney would agree that an anti-SLAPP motion did not lie under these circumstances and that the instant motion was totally devoid of merit.  Accordingly, an award to [the plaintiff] of reasonable attorney fees was mandatory (§ 425.16, subd. (c)), and the trial court lacked discretion to deny [the plaintiff's] request therefor."  (*Id*. at p. 200.)

Here, defendants' anti-SLAPP motion was similarly frivolous, and Workman presented undisputed evidence that it was brought to delay the litigation.  Under these circumstances, section 425.16, subdivision (c) states that "the court *shall* award costs and reasonable attorney's fees to a plaintiff prevailing on the motion."  The court abused its discretion by denying Workman's motion.

## WORKMAN'S REQUEST FOR SANCTIONS ON APPEAL

### A.    Background

In defendants' appeal from the anti-SLAPP motion ruling, Workman filed a motion for sanctions on appeal.  We gave defendants written notice that we were considering imposing sanctions, and informed them they could serve and file a written opposition.  (Cal. Rules of Court, rule 8.276(c), (d).)  The parties had the opportunity to address sanctions at oral argument.  (*Id*., rule 8.276(e).)

In her motion, Workman asserts that sanctions are warranted under section 907, which states, "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just."  (§ 907.)  She also asserts that sanctions are warranted under California Rules of Court, rule 8.276(a)(1), which states, "On motion of a party or its own motion, a Court of Appeal may

29

impose sanctions . . . on a party or an attorney for . . . [t]aking a frivolous appeal or appealing solely to cause delay."  (Cal. Rules of Court, rule 8.276(a)(1).)

Workman argues that the appeal was intended to further delay the case and harass Workman.  As evidence of delay, Workman points out the evidence she previously submitted relating to the delay in responding to the complaint, the delays in scheduling a mediation, the filing of the late anti-SLAPP motion, and the immediate appeal after the motion was denied.  She also points out that while the appeal was pending, defendants filed a request to stay all proceedings until the California Supreme Court decides a pending anti-SLAPP case, *FilmOn.com v. DoubleVerify, Inc.* (2017) 13 Cal.App.5th 707, 711, review granted November 15, 2017, S244157.  Workman filed an opposition to this request, and we denied it.

Workman also contends that defendants' appeal of their anti-SLAPP motion was frivolous, because there was no protected activity involved and no reasonable attorney would believe the appeal had merit.  Goldberg also submitted a declaration in which he noted that defendants' attorney has been harassing Workman and Doner during the pendency of the appeal.  Goldberg included a copy of a July 23, 2018 letter to him in which defendants' counsel, Todd S. Eagan of Lavely & Singer, stated that the "complaint is objectively frivolous, and the filing is not supported by existing law, lacks legal and evidentiary support and was quite obviously presented for an improper purpose."  Eagan demanded that because Workman "has significant exposure to an award of damages and attorneys' fees, demand is hereby made that all Trust funds be reserved and not disbursed to beneficiaries (. . . although her personal assets may be

attached to satisfy a judgment on a malicious prosecution claim)." The six-page letter went on to tell Goldberg that Workman's claims will fail, and stated, "The Complaint exposes [Workman] and your office, as well as Trust beneficiaries, to significant liability." Eagan demanded that the complaint be dismissed, and that Goldberg "forward a copy of this letter to [Workman] and your insurance carrier." Goldberg responded in a short email that he received the letter, and considered it "baseless threats seeking to harass and intimidate my client."

Eagan responded to Goldberg with another letter, dated August 7, 2018, reiterating his position that Workman's claims are "not supported by existing law, lack legal and evidentiary support and are presented for an improper purpose in what is nothing more than an attempt to shake down my clients for money." Eagan threatened again to file a malicious prosecution action, accused Workman and Doner of committing fraud in advertising the trust property for sale, and demanded that Workman dismiss the action with prejudice. Eagan closed by stating. "We take very seriously the tactics in which [Workman] has engaged based on your (poor) advice to her, and, rest assured, our law firm will utilize its full resources to hold both [Workman] and your office fully accountable."

Goldberg included a third letter from Eagan, dated August 20, 2018, to Peter Hernandez at Teles Properties, Doner's employer. Eagan stated in the letter that Doner's "admissions" in the declaration she submitted in support of the opposition to the anti-SLAPP motion "implicate the Company and gives [*sic*] rise to potentially significant liability on its part." Eagan demanded that the company preserve all communications regarding the sale of the property and the litigation.

31

Workman asserts that defendants' counsel's actions, including the attempt to stay the appeal and "seeking to harass [Workman] and her real estate agent during the pendency of this appeal, provide substantial evidence that the purpose of the appeal was to unnecessarily delay the proceedings." Workman requests attorney fees in the amount of $35,985.00 for handling the appeal and the motion.

## B. Opposition

In opposition, defendants assert that sanctions are not warranted because their motion and appeal were not frivolous. They contend that in cases in which appellate sanctions were imposed, "the sanctionable conduct was egregious, inexcusable and far removed from anything that [defendants] or their counsel have done in connection with this litigation." They cite *Personal Court Reporters, Inc. v. Rand* (2012) 205 Cal.App.4th 182, 192 in which this court found sanctions were warranted where the appellant based the appeal "on an argument that has been rejected and sanctioned in another trial court and affirmed on appeal." They also cite *Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 557 in which the Court of Appeal held that sanctions were warranted where the "Attorney Defendants attempt to reargue factual issues that have long been decided (and affirmed on appeal) while ignoring the relevant statutes and case law. At times, it is clear that Attorney Defendants brazenly misrepresented the record and/or obscured facts." Defendants argue that sanctions are not warranted because they "and their counsel have never previously raised (or lost) their central argument in this appeal."

Defendants also reassert their argument that there is a "public interest in preventing fraudulent disclosures in

connection with real estate sales." They contend that "it is indisputable that there is a long-standing (and statutorily recognized) public interest in preventing deceptive disclosures in connection with residential real estate sales; hence [defendants'] alleged conduct in insisting that [Workman] disclose their second story rights was in furtherance of that public interest."

Defendants further contend that they were "well within their rights" to send "litigation hold letters" to Doner and her employer, and "it is unclear how these letters in any way evidence a meritless appeal." Defendants assert that there is no evidence the appeal was filed solely to cause delay. They state that Workman's motion "does not actually contain or refer to any evidence whatsoever (documentary or otherwise) of purported delay. To the contrary [Workman's] entire position concerning delay is premised on nothing more than self-serving and disingenuous argument (not evidence)." They further claim that the anti-SLAPP motion was timely filed in the trial court based on the parties' stipulation, and defendants "moved with all due haste in filing this appeal on October 24, 2017, a mere 6 days after the trial court's denial of the anti-SLAPP motion."

Defendants also assert that their request to stay the case pending the decision in *FilmOn.com v. DoubleVerify, Inc.,* review granted was warranted, because at issue in that case is "whether it is the *content* of an alleged harmful statement, as opposed to the size of the statement's *audience*, that determines if California's anti-SLAPP statute applies to a claim arising from the statement." They state that defendants "contend that the anti-SLAPP statute applies because the content of the alleged statements pertains to an issue of widespread public interest: namely, preventing consumer fraud in the highly regulated area

33

of real estate sales. Accordingly, Appellants' position is directly in line with this District's holding in *FilmOn*."

**C.  Discussion**

"Under section 907 and California Rules of Court, rule 8.276(a)(1), we may award sanctions when an appeal is frivolous and taken solely to cause delay." (*Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.5th 1159, 1194.)  An appeal is frivolous "when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment-or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)  "Counsel and their clients have a right to present issues that are arguably correct.  An unsuccessful appeal should not be penalized as frivolous if it ""presents a unique issue which is not "indisputably" without merit' . . . . involves facts which are not 'amenable to easy analysis in terms of existing law'. . . , or makes a reasoned 'argument for the extension, modification, or reversal of existing law' . . . ."" (*Westphal v. Wal-Mart Stores, Inc.* (1998) 68 Cal.App.4th 1071, 1081.)

"In determining whether an appeal indisputably has no merit, California cases have applied both subjective and objective standards.  The subjective standard looks to the motives of the appealing party and his or her attorney, while the objective standard looks at the merits of the appeal from a reasonable person's perspective.  [Citation.]  Whether the party or attorney acted in an honest belief there were grounds for appeal makes no difference if any reasonable person would agree the grounds for appeal were totally and completely devoid of merit." (*Kleveland*

*v. Siegel & Wolensky, LLP, supra,* 215 Cal.App.4th at pp. 556-557.)

As discussed above, defendants' private email regarding the views from the neighboring private property is not an issue of public interest under the anti-SLAPP statute. Moreover, case law does not support defendants' attempts to divert the focus away from their own communication and onto the speculative impact their email might have had on communication from Doner to potential buyers that could then, hypothetically, impact an issue of public interest (real estate advertising). As in the Blackacre hypothetical, a claim that private communication about a private residence "involves a matter of public interest, because millions of Americans live in houses and buy and sell houses" is "absurd." (*Consumer Justice, supra,* 107 Cal.App.4th at p. 601.)

In their opposition to Workman's motion for sanctions on appeal, defendants assert for the first time that the anti-SLAPP motion and appeal were not intended for delay, but these arguments are feeble. Defendants' response to the complaint was due on June 19, 2017, but they did not file their anti-SLAPP motion until September 14, well beyond the 60-day deadline in section 425.16, subdivision (f). The trial court noted that the motion may have been untimely, but did not decide that issue. Defendants assert that their quick appeal shows they were not engaging in dilatory tactics, but given the sharp contrast compared to defendants' many delays in responding to the complaint and scheduling a mediation, the quick appeal could evidence a further attempt to delay a decision. (See *People ex rel. Lockyer v. Brar* (2004) 115 Cal.App.4th 1315, 1319 ["under a rule of automatic stay . . . the incentive to appeal even the denial of a

35

patently *frivolous* anti-SLAPP motion is overwhelming. "].) Moreover, there is evidence of attempts to harass and intimidate Workman and Doner through multiple attorney letters filled with threats and demands both prior to and during the pendency of the appeal.

We are also unpersuaded by defendants' claim that further delay was warranted due to the pending Supreme Court case *FilmOn.com v. DoubleVerify, Inc.*, review granted. As our colleagues in Division Three stated in their opinion, "Plaintiff FilmOn.com (FilmOn) is an Internet-based entertainment media provider. Defendant DoubleVerify, Inc. (DoubleVerify) provides authentication services to online advertisers. FilmOn sued DoubleVerify for trade libel, slander, and other business-related torts, alleging DoubleVerify falsely classified FilmOn's websites under the categories 'Copyright Infringement-File Sharing' and 'Adult Content' in confidential reports to certain clients that subsequently cancelled advertising agreements with FilmOn." (*FilmOn.com v. DoubleVerify, Inc.*, *supra*, 13 Cal.App.5th at p. 711, review granted.) After the defendant filed an anti-SLAPP motion, the trial court found, and the Court of Appeal agreed, that the communication at issue involved an issue of public interest, in part because "the presence of adult content on the Internet generally, as well as copyright infringing content on FilmOn's websites specifically, has been the subject of numerous press reports, regulatory actions, and federal lawsuits." (*Id.*, at p. 720.) The court rejected FilmOn's alternative argument that "DoubleVerify's reports could not have concerned an issue of public interest because they 'were made entirely in private, to individual companies that subscribed to its services.'" (*Ibid.*) The Court of Appeal stated, "[I]t is irrelevant that DoubleVerify made

36

its reports confidentially to its subscribers, because the contents of those reports concerned issues of widespread interest to the public." (*FilmOn.com v. DoubleVerify*, *supra*, 13 Cal.App.5th at p. 723, review granted.)

Defendants assert that a stay was warranted to await the Supreme Court's ruling in *FilmOn.com* because "[h]ere, [defendants] contend that the anti-SLAPP statute applies because the content of the alleged statements pertains to an issue of widespread public interest:  namely, preventing consumer fraud in the highly regulated area of real estate sales. Accordingly, [defendants'] position is directly in line with this District's holding in FilmOn. . . .  [¶]  If the Supreme Court ultimately affirms this District's decision in *FilmOn*, it will effectively validate [defendants'] position in this appeal."  As defendants' communication addressed the views from a single home and not consumer fraud, this argument is unpersuasive.

This case is simply "[a]nother appeal in an anti-SLAPP case.  Another appeal by a defendant whose anti-SLAPP motion failed below. Another appeal [with] no merit, [which] will result in an inordinate delay of the plaintiff's case and cause [her] to incur more unnecessary attorney fees." (*Moriarty v. Laramar Management Corp*. (2014) 224 Cal.App.4th 125, 128.)  Thus, we find an award of sanctions to be appropriate, and grant Workman's motion.

"Among the specific factors we may consider in determining the appropriate amount of sanctions are the amount of respondent's attorney fees on appeal; . . . the degree of objective frivolousness and delay; and the need for discouragement of like conduct in the future." (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 33-34.)  Workman has requested sanctions of $35,985.00, the

amount of the attorney fees incurred in responding to defendants' frivolous appeal.  (See, e.g., *Diaz v. Professional Community Management, Inc.* (2017) 16 Cal.App.5th 1190, 1217 [the "damages suffered by [the respondent] resulting from this frivolous appeal" include "the reasonable value of counsel's services in defending this appeal."].)  We note that even if Workman had not requested sanctions, she would be entitled to attorney fees on appeal pursuant to section 425.16, subdivision (c)(1), which are typically "determined by the trial court after the appeal is resolved."  (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1320; see also *L.A. Taxi, supra*, 239 Cal.App.4th at p. 933.)  Defendants have not challenged the amount requested, and we see no need for remand for a determination of appellate fees.  We therefore find Workman's requested attorney fees to be an appropriate sanction.

"Courts, with increasing frequency, have imposed additional sanctions, payable to the clerk of the court, to compensate the state for the cost to the taxpayers of processing a frivolous appeal.  [Citation.]  The cost of processing an appeal that results in an opinion has been estimated to be approximately $8,500."  (*Singh v. Lipworth* (2014) 227 Cal.App.4th 813, 830; see also *In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 520 (in 2008, a cost analysis by the Second Appellate District "indicate[d] the cost of processing an appeal that results in an opinion by the court to be approximately $8,500."]; *Kleveland v. Siegel & Wolensky, LLP, supra,* 215 Cal.App.4th at p. 560 [appellate sanctions to be paid directly to the clerk of the court

38

"have recently ranged from $6,000 to $12,500."].[8])  We find that additional sanctions in the amount of $8,500.00 are appropriate.

"Sanctions may be ordered against a litigant [citation] and/or against the lawyer." (*In re Marriage of Schnabel* (1994) 30 Cal.App.4th 747, 755.)  Sanctions are warranted against a lawyer "who, because the appeal was so totally lacking in merit, had a professional obligation not to pursue it." (*Id*. at p. 756.)  We find that sanctions are appropriate against both defendants and their counsel of record:  Todd S. Eagan of Lavely & Singer Professional Corporation.  We therefore sanction defendants and their attorneys, jointly and severally, in the amount of $35,985.00, payable to Workman, and in the amount of $8,500.00, payable to the clerk of this court.

This opinion constitutes a written statement of our reasons for imposing sanctions.  (*In re Marriage of Flaherty, supra*, 31 Cal.3d at p. 654; *Westphal v. Wal-Mart Stores, Inc.*, *supra*, 68 Cal.App.4th at p. 1083.)

## DISPOSITION

The order denying defendants' special motion to strike is affirmed.  The trial court order denying Workman's motion for attorney fees is reversed, and the trial court is directed to enter a new order granting that motion.  Sanctions are imposed upon defendants Colichman and Millbern, as well as their counsel of

---

[8]At oral argument, after the court suggested that sanctions payable to the court would be appropriate, counsel for defendants stated that for due process purposes, he would like a chance to look at the cases that discuss such sanctions. *Kleveland* is cited throughout Workman's motion for sanctions on appeal, and defense counsel had ample opportunity to read it and other cases regarding sanctions.  All due process requirements have been met here.

record, Todd S. Eagan of Lavely & Singer Professional Corporation, jointly and severally, in the amount of $35,985.00, to be paid to Workman, and $8,500.00 to be paid to the clerk of this court. Defendants' counsel of record and the clerk of this court are each ordered to forward a copy of this opinion to the State Bar upon return of the remittitur. (Bus. & Prof. Code, §§ 6086.7, subd. (a)(3), 6068, subd. (o)(3).) All sanctions shall be paid no later than 15 days after the date the remittitur is filed. Workman is entitled to costs on appeal.

**CERTIFIED FOR PUBLICATION**


COLLINS, J.

We concur:


MANELLA, P. J.


WILLHITE, J.