Filed 5/27/22  Palm v. Red Lobster Hospitality LLC CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LE'ELDRED PALM, SR.,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RED LOBSTER HOSPITALITY LLC,<br><br>Defendant and Appellant. | B309233<br><br>Los Angeles County<br>Super. Ct. No. 20STCV07929 |

APPEAL from an order of the Superior Court of Los Angeles County, Rafael A. Ongkeko, Judge.  Affirmed.

Baker & Hostetler, Shareef S. Farag, Joseph S. Persoff and Amy E. Beverlin for Defendant and Appellant.

Le'Eldred Palm, Sr., in pro. per., for Plaintiff and Respondent.

_____

## SUMMARY

Plaintiff Le'Eldred Palm, Sr., sued Red Lobster Hospitality LLC (Red Lobster or defendant) and two of its employees, alleging causes of action for negligence, intentional infliction of emotional distress, violation of the Unruh Civil Rights Act (Civ. Code, § 51), and violation of the Tom Bane Civil Rights Act (Bane Act, Civ. Code, § 52.1). Defendant filed an anti-SLAPP (strategic lawsuit against public participation, Code Civ. Proc., § 425.16) motion to strike the complaint. (Undesignated statutory references are to section 425.16.) The trial court granted the motion in part and denied it in part. Defendant appeals, contending the court should have struck the entire complaint.

We affirm the trial court's order.

## FACTS

### 1. Plaintiff's Complaint

In early 2018, plaintiff, an African-American male, patronized the Red Lobster restaurant in Lakewood. On one of those occasions, plaintiff was sitting at the bar talking with another man. When the bartender, Robert Gagnon, served him his drink, he said, "There you go boss." Plaintiff "immediately started having heart palpitations, shortness of breath, and began to sweat." He told the bartender not to call him "boss" because "it was a racial stereotype." The bartender laughed and "half heartily apologized."

When a new bartender came on duty, plaintiff asked to speak to a manager. The manager, Luis Perez, said that the bartender "was trying to serve you better." Plaintiff explained that the term "boss" refers to "gang bangers, thugs, and drug dealers," and asked the manager if he was aware of the Unruh Civil Rights Act. Plaintiff informed Mr. Perez that the Unruh Civil Rights Act

2

prohibits all forms of stereotypical discrimination in all business establishments, and that the manager should know about the Act.

After that incident, plaintiff patronized the restaurant several times over several weeks, but "was concerned about whether or not Red Lobster's employees would retaliate against him for complaining about being racially stereotyped."

On March 8, 2018, several weeks after the "boss" incident, plaintiff met with William Drake at the restaurant. While they were talking at the bar, Mr. Drake accidentally knocked over his glass of wine and the glass broke. Plaintiff went to the restroom to clean the wine from his shoes, and as he was returning, a group of people at a table complimented his African attire. While showing them how it was made, plaintiff accidentally knocked over a glass of wine that was close to the edge of their table. Plaintiff apologized and the group accepted his apology "in a kind and friendly manner."

Plaintiff returned to the bar area, and a few minutes later, a young man "tapped [plaintiff] on his left shoulder and told [plaintiff] 'we have to ask you to leave.'" Steven Patch was the manager who asked plaintiff to leave. Plaintiff refused. A few minutes later, three deputy sheriffs entered the restaurant, and asked to speak with plaintiff outside. Plaintiff complied, and "was then told by one of the deputies he had knocked over a cart and broke some glasses." He told them he did not knock over a cart or break any glasses. One of the deputies said, "they don't want you here, you have to leave."

On March 12, 2018, plaintiff called the sheriff's department. Sergeant Oakley retrieved the report on the March 8 incident, and told plaintiff, "You were breaking glasses on the bar, arguing with staff and you refused to leave." Plaintiff told Sergeant Oakley that

3

none of those events took place, and arranged to obtain a copy of the report.

On March 13, 2018, plaintiff went to the restaurant and sat at the bar.  Mr. Perez told plaintiff, "You are no longer welcome at the restaurant."  Mr. Perez brought over the general manager, Michael Waller, who told plaintiff that the sheriff's department "told me not to serve you, and to call them if you returned to the restaurant, you have to leave."  Plaintiff went out to the parking lot and called the sheriff's department, and a deputy told him the department did not (and did not have the authority to) tell the restaurant not to serve plaintiff.  Plaintiff reported the deputy's statement to Mr. Waller, who had stepped outside the restaurant.  Mr. Waller then stated, "you are not allowed to enter the restaurant today; you can come back tomorrow to discuss entering the restaurant."  They made an appointment for the following day.

Plaintiff and a friend, Cranston Howard, attended the meeting on March 14, 2018, with Mr. Waller.  Mr. Waller told plaintiff, "[Y]ou are allowed to patronize the restaurant; however, you are not allowed to speak to anyone outside of the bar area, and if you do, I have instructed my staff to call the authorities to have you removed from the restaurant."  Mr. Waller further stated that "also, you are not allowed to speak to anyone in the restaurant concerning their civil rights, and if you do, I have instructed my staff to call the [authorities] to have you removed from the restaurant."

On February 28, 2020, plaintiff filed a complaint alleging the facts just described, naming Red Lobster Hospitality LLC, Robert Gagnon, and Michael Waller as defendants.  (The trial court granted a motion to quash service of summons on Mr. Gagnon and

Mr. Waller, and that ruling is not at issue.) Plaintiff alleged four causes of action.

In his negligence claim, plaintiff cited Mr. Gagnon's use of the term "boss" as a "stereotypical discriminatory racial epithet"; Mr. Waller's conduct that "denied [plaintiff] access to Red Lobster[']s restaurant, and threaten[ed] [plaintiff] with removal from the restaurant if he spoke to anyone in the restaurant concerning civil rights"; and the "false report to the Lakewood Sheriff[']s Department accusing [plaintiff] of 'Vandalizing,' [its] property."

Plaintiff's second cause of action, for intentional infliction of emotional distress, likewise relied on the "boss" incident; the "false Sheriff's report" by one of Red Lobster's agents "which had [plaintiff] removed from their restaurant in full public view"; the denial of service; and the threat "that if he spoke to any patrons about civil rights in public accommodations for African Americans the Sheriff's would be called on him to have him removed again from" the restaurant.

Plaintiff's third cause of action alleged violation of the Unruh Civil Rights Act based on the same set of facts. Plaintiff alleged defendant "made a distinction that incited a denial of the full and equal accommodations, advantages, facilities, privileges and services to [plaintiff]." Plaintiff asserted race was a substantial motivating reason for defendant's discriminatory conduct against him.

Finally, plaintiff alleged "coercion in violation of the Bane Civil Rights Act" against Red Lobster and Mr. Waller, "based on a nonviolent threat with severe consequences." Plaintiff alleged the false report to the sheriff's department accusing him of vandalism interfered with his right to patronize the restaurant. Plaintiff

5

again alleged that Mr. Waller told him "if he spoke to any African American[]s in the restaurant about their civil rights that he has instructed his staff to call the Sheriff's Department to have [plaintiff] remove[d] from the restaurant."

## 2.     Defendant's Motions

Defendant filed a demurrer to the complaint and an anti-SLAPP motion to strike the complaint, the latter supported by declarations from Mr. Waller, Mr. Gagnon, and Steven Patch. Defendant's declarations painted a somewhat different picture from that described in the complaint.

Mr. Waller stated that plaintiff "was inebriated and knocked over the drinks of other restaurant guests" during the March 8 incident. At their meeting on March 14, he told plaintiff "that he is welcome to drink at the restaurant, but that he cannot overdrink and he cannot disrupt other restaurant patrons." Mr. Waller described and attached logbook entries of the day's activities for March 8 and March 13, stating that managers are required to maintain these logs for every shift they work, inputting the information on the same day.

Mr. Gagnon's declaration described the occasion on which he presented plaintiff with a drink and said, "here you go, boss." He stated the term "boss" is one he "regularly used in conversation with people to help develop rapport." Plaintiff "explained to me that he deemed the term 'boss' offensive." Mr. Gagnon also described the March 8 incident. He stated plaintiff "had had a few drinks and was clearly inebriated. [Plaintiff] stood up from the bar and began approaching other tables, initiating conversations with the other restaurant patrons. It was apparent that [plaintiff] was making these other restaurant patrons uncomfortable. At one of

6

the tables [plaintiff] approached, he knocked over a drink." A manager asked plaintiff to leave and he refused.

Steven Patch was the manager who asked plaintiff to leave on March 8, and who called the police when he refused. His declaration stated plaintiff drank four glasses of Johnnie Walker Black, was clearly inebriated, initiated conversations with patrons he did not know, and knocked over "multiple glasses of wine and a bottle of wine"; one of the glasses of wine "broke onto one of the patrons." Mr. Patch asked plaintiff to stay at the bar and not to bother other restaurant guests; plaintiff "became hostile and aggressive" and told Mr. Patch he would not leave. Mr. Patch called the police. He entered a recap of his March 8 shift into the computer system. A copy of the log for that date is attached to his declaration.

Defendant argued that plaintiff's claims all arose out of (1) allegations that Red Lobster made a false report to the sheriff's department, and (2) allegations that Mr. Waller told plaintiff "he could not speak to restaurant patrons about civil rights." Defendant pointed out that filing a police report, even a false one, is protected activity. The claim that Mr. Waller told plaintiff he could not speak to other patrons about civil rights, defendant argued, arose from Red Lobster's "alleged desire not to have civil rights, an issue of public interest, discussed at its open-to-the-public restaurant." Defendant contended it was within Red Lobster's "civil rights not to have certain speech associated with its restaurant." "Simply put, African American civil rights are an issue of public interest and Plaintiff's allegations arise out of Defendants' alleged attempts to moderate discussion of that issue at the restaurant." Defendant further contended plaintiff could not establish any of his claims had minimal merit.

7

Plaintiff's opposition argued none of his claims arose from protected activity, and he could establish a probability of success. He included a declaration from William Drake, stating it was he who accidentally hit and broke his glass of wine on the countertop at the bar, and "[t]here were no issues or ill feelings on anyone's part." Plaintiff also presented a declaration from a Red Lobster bartender, Carl Winters, who was ending his shift at the time of the March 8 incident. Mr. Winters saw Mr. Drake accidentally knock over his glass while Mr. Drake and plaintiff were talking. Mr. Winters helped clean up the glass, and both plaintiff and Mr. Drake thanked him. Before he left the building, he noticed his manager approach plaintiff and Mr. Drake, and thought the manager "was concerned about safety and wanted to check to see how [plaintiff] and [Mr. Drake] were doing."

A declaration from Cranston Howard recounted the March 14 meeting he attended with plaintiff and Mr. Waller. Mr. Howard's declaration stated Mr. Waller "told [plaintiff] he could patronize the restaurant; however, he was restricted to the bar area, and the bar area alone." Mr. Waller told plaintiff "he could not interact or associate with anyone outside of the bar area, and if he did not comply he had instructed his staff to notify the authorities. [¶] Mr. Waller, also told [plaintiff] that he was not allowed to speak to other patrons concerning their civil rights, and again told [plaintiff] if he did the authorities would be called." During the meeting, Mr. Waller's "attitude toward [plaintiff] was mean spirited, demeaning, and condescending."

8

### 3.     The Trial Court's Ruling

The court held a hearing on defendant's anti-SLAPP motion and on defendant's demurrer to the complaint on October 5, 2020.

The trial court ruled that the filing of a police report, where its veracity is in dispute, is protected activity.  Consequently, defendant met its prima facie burden to show it was engaging in protected activity "[f]or all allegations in the complaint relating to Defendants' filing a 'false report' to the sheriff."

The court found the other allegations did not arise from protected activity.  Thus:

Defendant was required to demonstrate the statements in "asking plaintiff to leave and not patronize [the] restaurant" were in connection with an issue of public interest under either subdivision (e)(3) or (e)(4) of the anti-SLAPP statute.  "The court does not find that Defendants' comments to one party about whether or not they can patronize one particular restaurant (or what areas in that restaurant) to be an issue that affects large numbers of people beyond the direct participants," or that it was a newsworthy event, so the activity was not protected.

The court also rejected defendant's claim that "not allowing Plaintiff to discuss civil rights" was protected activity.  The court observed Red Lobster was "not being forced to hold an opinion for which it does not agree."  Further, the conduct alleged "did not occur in an open forum carried over public radio or even some other public forum.  Accordingly, the alleged speech did not affect a large number of people and, thus, is not a public issue."

Similarly, addressing plaintiff as "boss" did not affect large numbers of people beyond the direct participants and did not involve a topic of widespread public interest, and so was not protected activity.

9

The court further ruled that plaintiff could not establish the minimal merit of the claims involving the police reports. "[S]tatements Defendants allegedly made to the Lakewood sheriff deputies fall under the litigation privilege in Civil Code § 47(b)." Consequently, "[a]ll allegations of Plaintiff's claims concerning and arising from any police (more precisely, sheriff) reports are stricken."

The court also sustained defendant's demurrer, finding plaintiff failed to sufficiently allege causes of action for negligence, intentional infliction of emotional distress, or violations of the Unruh Civil Rights Act and the Bane Act. The court sustained the demurrers to each cause of action with leave to amend, and plaintiff filed his first amended complaint on October 27, 2020.

On November 24, 2020, defendant filed a notice of appeal from the court's order denying its special motion to strike.

## DISCUSSION

We find no error in the trial court's ruling.

1. **The Law**

The anti-SLAPP statute and procedures have been described many times.

A defendant may bring a special motion to strike any cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." (§ 425.16, subd. (b)(1).) Acts in furtherance of free speech rights in connection with a public issue include, as relevant to this appeal, "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest," and "any other conduct in

10

furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (*Id.*, subd. (e)(3) & (4).)

When ruling on an anti-SLAPP motion, the trial court employs a two-step process. The moving defendant bears the initial burden of establishing that the challenged allegations or claims " ' "aris[e] from" protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least "minimal merit." ' [Citation.] If the plaintiff fails to meet that burden, the court will strike the claim." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.)

In making these determinations, the trial court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) "As to the second step, a plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' " (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)

Our review is de novo. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

**2. This Case**

**a. Protected activity**

As relevant to this appeal, plaintiff claims to have been injured by defendant's conduct (1) in calling him "boss," a term he views as a derogatory racial epithet, and (2) in denying him service by telling him he can patronize the restaurant only if he does not discuss civil rights issues with other patrons of the restaurant. (We need not consider the allegations concerning the false police

11

report, as these have been stricken and plaintiff has not appealed that ruling.)

Defendant contends that "civil rights is an issue of public interest," and the trial court "applied the incorrect legal standard" in ruling otherwise. Defendant is mistaken, as the precedents we describe *post* plainly show.  The trial court properly concluded defendant's statements and conduct are not statements or activity "in connection with a public issue or an issue of public interest" (§ 425.16, subd. (e)(4)).

But first, we point out that defendant's arguments have made a simple case appear to be complicated.  Defendant begins with a convoluted argument that confuses the step one analysis of protected activity with the merits of the claims.  Defendant argues, for example, that plaintiff's Unruh Civil Rights Act claim does not arise out of the "boss" statement because that statement is not a denial of service based on discrimination.  Similarly, defendant asserts the Bane Act claim does not arise out of the "boss" statement because speech is insufficient to establish the requisite threat under the Bane Act.  These are arguments about the merits of plaintiff's claims and are irrelevant in the step one analysis of whether defendant's statement was protected activity.

The defendant can satisfy the "arising from" requirement only by " 'demonstrat[ing] that *the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e) . . . .' " (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1063.)  Here, the injury-producing conduct plaintiff has alleged includes the "boss" statement and the "no discussion of civil rights" statement.  The only question at step one is whether those statements are protected First Amendment activity under the anti-

SLAPP statute.  The statements are not protected activity unless they were made in connection with an issue of public interest.  They were not.

"[B]oth the third and fourth categories of conduct that fall within section 425.16[, subdivision (e)] are subject to the limitation that the conduct must be in connection with an issue of public interest.  The Legislature intended this requirement to have a limiting effect on the types of conduct that come within the third and fourth categories of the statute."  (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132.)

The point is summarized in *Workman v. Colichman* (2019) 33 Cal.App.5th 1039 (*Workman*).  "To fall under section 425.16(e)(4), 'the conduct must be in connection with an issue of public interest.'  [Citation.]  '[A] matter of public interest should be something of concern to a substantial number of people,' and 'the assertion of a broad and amorphous public interest is not sufficient.'  [Citation.]  'In evaluating the first prong of the anti-SLAPP statute, we must focus on "the specific nature of the speech rather than the generalities that might be abstracted from it." '  [Citations.]  To be considered an issue of public interest, the communication must 'go beyond the parochial particulars of the given parties.' "  (*Id.* at p. 1048.)

The Supreme Court makes the same point in *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133 (*FilmOn*).  "[A] statement is made 'in connection with' a public issue when it contributes to—that is, 'participat[es]' in or furthers—some public conversation on the issue."  (*Id.* at p. 151.)  "[W]e agree . . . that 'it is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate.' "  (*Id.* at p. 150.)  " '[T]he fact that

13

"a broad and amorphous public interest" can be connected to a specific dispute' " is not enough. (*Ibid.*)

None of these criteria is met, either by the "boss" statement or by defendant's conduct allegedly telling plaintiff that he cannot discuss civil rights issues with patrons at the restaurant, and will be removed if he does. The fact that "civil rights" is the topic plaintiff cannot discuss in the restaurant does not transform defendant's conduct into conduct "in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).)

Defendant's statements are not matters of "widespread public interest" and neither further nor involve participation in any public discourse on an issue of civil rights. The communication occurred in a meeting among plaintiff, Mr. Howard, and Mr. Waller, not in a public forum, and it did not " 'go beyond the parochial particulars of the given parties.' " (*Workman*, *supra,* 33 Cal.App.5th at p. 1048.)

Red Lobster makes another convoluted argument that it has a First Amendment right "to refrain from speaking at all," and "has the constitutional right not to become the 'go-to' place to discuss civil rights in the community," and "has the right to be associated with its food rather than the potentially controversial topics of conversation of its patrons." These rather odd assertions do not explain why defendant's statement to plaintiff that he may not discuss civil rights in its restaurant is a matter of public interest.

In sum, when defendant directly addresses the public interest issue, it merely states that "civil rights" is an issue of public interest. This is a classic example of a litigant attempting to connect " ' "a broad and amorphous public interest" ' " to a specific dispute, but, as *FilmOn* instructs, such a connection "is not

enough." (*FilmOn, supra,* 7 Cal.5th at p. 150.) Here, none of the considerations identified in *FilmOn* as constituting a matter of public interest exists. Neither party is in the public eye, the subject matter does not affect large numbers of people beyond the direct participants, and the activity did not occur in the context of an ongoing public controversy, dispute or discussion. (See *id.* at p. 145.)

The only legal authorities defendant cites are *FilmOn* and *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1546, for the general proposition that section 425.16, subdivision (e)(4) applies to private speech and the communication need not be in a public forum. That is correct, but the private communications must concern "issues of public interest." (*Terry,* at p. 1546; *id.* at p. 1547 [" 'the assertion of a broad and amorphous public interest is not sufficient' "].) That is all we have here, and consequently defendant has not demonstrated it engaged in activity protected by the anti-SLAPP statute. Accordingly, plaintiff was not required to demonstrate a probability of prevailing on his claims.

### b. Defendant's alternative contention

Defendant contends that if we conclude, as we do, that plaintiff's claims do not arise out of defendant's protected activity, we should "exercise [our] discretion to review the trial court's grant of leave to amend following its sustaining of Red Lobster's demurrer to all four of Plaintiff's causes of action." Defendant says this would "avoid unnecessary delay and waste of resources," and that we have discretion "to treat a purported appeal from a non-appealable order as a petition for writ of mandate." But there has been no "purported appeal from a non-appealable order"; the only appeal before us is from the court's anti-SLAPP ruling. We are

15

aware of no authority allowing us to review a trial court's ruling sustaining a demurrer to an original complaint with leave to amend. The requirements for writ relief are not met here. Any "unnecessary delay" is a result of defendant's choice to file an anti-SLAPP motion that, predictably, was only partially successful.

## DISPOSITION

The order is affirmed. Plaintiff shall recover his costs on appeal.


GRIMES, J.


WE CONCUR:


STRATTON, P. J.


HARUTUNIAN, J.*

---

\*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16