Filed 3/29/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JOSEPH GAZAL, | B327668 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. 22TRCV00429 |
| CARLOS ECHEVERRY et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County. Ronald F. Frank, Judge. Affirmed.

LiMandri & Jonna, Charles S. LiMandri, Paul M. Jonna, Mark D. Myers and Jeffrey M. Trissell for Defendants and Appellants.

Thomas Law Group, Paul William Thomas, Neda Ataie; Jeff Lewis Law, Jeffrey Lewis and Kyla Dayton for Plaintiff and Respondent.

_____

## SUMMARY

Plaintiff Joseph Gazal was inspired by a homily, delivered during church services by defendant Carlos Echeverry, a deacon at plaintiff's church, to donate more than $1 million to purchase a car and a home for a destitute family. Plaintiff brought this lawsuit about five months later, claiming he was deceived into believing the car and house would be purchased for and titled to the family; and he would not have made the donation if he had known SOFESA, Inc., a nonprofit public benefit corporation founded and led by the deacon's wife, Jessica Echeverry, would buy the car and house for itself, instead of the family.

Defendants filed a special motion to strike the complaint under the anti-SLAPP (strategic lawsuit against public participation) statute. (Code Civ. Proc., § 425.16; further statutory references are to section 425.16.) Defendants asserted the homily was protected speech, and so were a conversation between the deacon and plaintiff that occurred in the church after the homily, as well as all the private conversations that ensued over the following 10 days or so.

The trial court denied the motion, finding the "core injury-producing conduct upon which the plaintiff's claim is premised" did not rest on protected speech, but rather on "conduct and speech that was private . . . and not directed at a wide public audience"; and that "the causes of action arose from further communications" that took place in the weeks after the homily.

We agree and affirm the trial court's order. We deny a motion for sanctions plaintiff filed in this court.

## FACTS

Plaintiff, 80 years old and retired, had been a member of St. Gerard Majella Church for over 15 years. Defendant Carlos (also known as Charlie) Echeverry was a deacon at the church. (We refer to him as the deacon.) At a Sunday mass on December

19, 2021, the deacon delivered a homily on the theme of love. During the homily, he described a family in need with four children who had fled from an abusive husband and father. They had no home and were living in a motel. The deacon read a letter to Santa written by the eldest child, a 12-year-old boy, saying the family had lost everything and asking for gifts for his little brothers.

After the homily, a line of parishioners including plaintiff stood waiting to speak to the deacon about helping the family. The deacon told them that immediate funds were needed to purchase a home for the family. According to the deacon, plaintiff "asked to speak with me at more length," and they "sat together in a pew in full view of dozens of other people in the immediate proximity." Plaintiff told the deacon "that he would donate a large sum for a house for this destitute family."

Within a few days, the deacon introduced plaintiff to his wife, defendant Jessica Echeverry, the founder and executive director of SOFESA. SOFESA was incorporated in 2007 with the name "Sore Feet Saviors" as a charity to provide emergency assistance to homeless and low income families. Most communications over the next couple of weeks between plaintiff and the deacon included both the deacon and his wife. Defendants told plaintiff the family was in immediate need of a car because their car had significant body damage making it unsafe to drive. Plaintiff agreed to donate $40,000 immediately to purchase a new car for the family.

On December 24, 2021, plaintiff donated $47,143.91. Subsequent donations were $100,000 on December 27, 2021; $100,000 on December 28, 2021, and $800,000 on December 29, 2021, "for a total of $1,047,143.91 to purchase a car and a home for the family." Plaintiff "had to withdraw funds from savings and borrow against his line of credit to be able to donate this

3

amount," and he did so with the understanding he was helping a destitute family. He told defendants that funds not used to purchase a car and a home had to be returned to him.

On January 18, 2022, defendants told plaintiff a house was purchased for the family, but they did not mention the purchase price. Defendants asked plaintiff to complete a W-9 form; they stated SOFESA would be required to issue plaintiff a 1099 form for the funds being returned. Plaintiff complied because he was in dire need of the money.

Plaintiff then demanded an accounting of his donation, including the escrow closing statement and information on the amount of money received when defendants sold the family's old car. "Defendants continued to ignore Plaintiff's request" until February 9, 2022, when plaintiff's counsel sent a demand letter. (Plaintiff sent e-mails on January 26, 2022, and February 2, 2022, explaining his precarious financial situation, and again asking for the escrow closing statement.) Plaintiff consulted with two priests at the St. Gerard Majella Church, and was told defendants' "solicitation of the large sum of money was contrary to church practices and there should have been a discussion with the church."

The February 9, 2022 letter to defendants from plaintiff's counsel demanded an accounting, including the escrow closing statement and other documents, and demanded return of plaintiff's entire donation, asserting the solicitation was unlawful and a violation of church rules. That same day, the deacon's wife responded to plaintiff's February 2 e-mail, attaching a redacted closing statement and a one-page ledger sheet showing how plaintiff's donation was spent. The closing statement showed SOFESA, not the family, as the buyer. The ledger sheet included items "never discussed or agreed upon which is why only $195,000 was returned to the Plaintiff."

Plaintiff filed his complaint on June 1, 2022, alleging causes of action for breach of contract, breach of fiduciary duty, three fraud-related causes of action, elder financial abuse, unlawful solicitation, unfair business practices, and an accounting. The named defendants were the deacon, his wife, and SOFESA. Seven causes of action were expressly based on the claim that defendants used plaintiff's donation to purchase the house and the car for SOFESA and in SOFESA's name rather than for the family, "contrary to what the parties agreed," and that his donation was also used for other items "never agreed upon." The complaint alleged that SOFESA "has the ability to evict [the family] at any time, charge rent and take away their only mode of transportation . . . . Defendants misrepresented material facts and Plaintiff would not have withdrawn from his savings or borrowed money to make this substantial donation for this family had he known the car and house would be purchased in Defendant Sofesa's name."

Plaintiff's seventh cause of action for "unlawful solicitation" alleged that on December 19, 2021, the deacon "solicited donations for an alleged family in need of a home at the St. Gerard Majella Church"; that "[t]he discussions continued and further solicitation for a new car was made"; that SOFESA's registration with the Attorney General's Registry of Charitable Trusts was delinquent "at the time the solicitation was made"; and that a delinquent organization "is not in good standing and prohibited from engaging in conduct for which registration is required including solicitation or disbursing charitable funds."

In addition to alleging that the deacon's reading of the letter to Santa "was intended and did capture the sympathy and heart of the parishioners, including Plaintiff," plaintiff alleged that during the homily, the deacon "cloaked charitable solicitation in faith-based rhetoric" and "called on several biblical

5

analogies" to "further induce charitable contributions" for SOFESA's benefit.

As recounted at the outset, defendants filed an anti-SLAPP motion, and the trial court denied it on the ground plaintiff's claims did not arise from protected activity. Because the court found defendants did not carry their threshold burden, the court did not consider whether plaintiff had demonstrated his claims had at least minimal merit.

Defendants filed a timely notice of appeal.

## DISCUSSION

**1.    The Law**

A defendant may bring a special motion to strike any cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." (§ 425.16, subd. (b)(1).) When ruling on an anti-SLAPP motion, the trial court employs a two-step process. The moving defendant bears the initial burden of establishing that the allegations or claims " ' "aris[e] from" protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least "minimal merit." ' [Citation.] If the plaintiff fails to meet that burden, the court will strike the claim." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.)

Our review is de novo. (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1250.)

As relevant here, defendants must establish the conduct alleged in the complaint was protected under either of two provisions: either the claims arise from a "written or oral statement or writing made in a place open to the public or a

6

public forum in connection with an issue of public interest"
(§ 425.16, subd. (e)(3)), or they arise from "any . . . conduct in furtherance of the exercise of the constitutional right . . . of free speech in connection with a public issue or an issue of public interest" (§ 425.16, subd. (e)(4), the catchall provision).

## 2.     **This Case**

Defendants contend plaintiff's complaint arises "from protected religious preaching."  According to defendants, both the homily *and* the conversation between the deacon and plaintiff in the church after the homily were protected under section 425.16, subdivision (e)(3), as statements "made in a place open to the public or a public forum in connection with an issue of public interest."  (*Ibid*.)  As for the subsequent private discussions, defendants argue those conversations "cannot form a distinct claim for relief and thus are incidental."  Defendants say the private discussions were protected under the catchall provision (§ 425.16, subd. (e)(4)) that covers "any other conduct" in furtherance of First Amendment rights "in connection with a public issue or an issue of public interest."  (*Ibid.*)

None of these arguments has any merit except, partially, the first:  We will assume that the deacon's homily at a public church service on issues of homelessness and Christian charity was protected First Amendment activity.  (The trial court pointed out that the public forum requirement of section 425.16, subdivision (e)(3) was satisfied by the broadly inclusive church service with the homily having been uploaded to the internet for an even broader segment of the public.)  But the moving party "must establish both (1) that its act constituted protected activity and (2) the opposing party's cause of action arose from that

7

protected activity." (*Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 130.)

Here, the problem for defendants is that plaintiff's claims do not arise from the homily. His claims arise from the alleged misconduct that occurred after delivery of the homily. Conduct does not become protected activity simply because it follows protected activity. (See *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 (*City of Cotati*) ["That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such."]; see also *id.* at p. 77 ["California courts rightly have rejected the notion 'that a lawsuit is adequately shown to be one "arising from" an act in furtherance of the rights of petition or free speech as long as suit was brought after the defendant engaged in such an act, whether or not the purported basis for the suit is that act itself.' "].)

As *City of Cotati* and other cases tell us, "the statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*City of Cotati*, *supra*, 29 Cal.4th at p. 78; see also *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060 (*Park*) [the determinative issue is whether "the speech or petitioning activity *itself* is the wrong complained of"].) "Phrased another way, does the ' "core injury-producing conduct upon which the plaintiff's claim is premised" ' arise out of protected activity?" (*Starr v. Ashbrook* (2023) 87 Cal.App.5th 999, 1020.)

As the trial court observed, the homily "set in motion a series of events that resulted in the claimed misconduct." Certainly the homily inspired plaintiff to offer to buy a car and a

house for the destitute family described in the homily.  But that is as far as it goes.  Plaintiff would have no claims were it not for the conduct he alleged in seven of his causes of action: defendants' conduct of buying the house in SOFESA's name rather than in the name of the family, and using the donation for items never discussed or agreed upon.[1]  The homily does not supply an element of any of those claims.  (See *Park, supra,* 2 Cal.5th at p. 1063 ["in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability"].)

Defendants' other contentions do not change this result.

Defendants contend the conversation between plaintiff and the deacon immediately after the homily, in which plaintiff offered to buy a home for the family, was protected activity because it "took place in the church while it was still open to the public, and while other members of the parish were nearby."  The deacon's declaration states that plaintiff "asked to speak with me at more length, . . . so we sat together in a pew in full view of dozens of other people in the immediate proximity," and plaintiff "then spontaneously . . . offered to donate money to provide housing for the family."  Being in a public place within sight of others does not change a private conversation into a public one.

---

[1]  The only cause of action not expressly based on that conduct was plaintiff's seventh cause of action for "unlawful solicitation," alleging SOFESA's registration was delinquent and therefore it was prohibited from soliciting for charitable purposes (Cal. Code Regs., tit. 11, § 999.9.4) at the time.  The complaint alleges the deacon solicited donations both on December 19, 2021 (the date of the homily and the conversation between the deacon and plaintiff in the church) and subsequently for the new car.

In any event, that conversation, like the homily, is not the " ' "core injury-producing conduct upon which the plaintiff's claim is premised." ' " (*Starr v. Ashbrook, supra,* 87 Cal.App.5th at p. 1020.)

Next, defendants contend all the subsequent communications between plaintiff and defendants were also protected activity under the catchall provision of the anti-SLAPP statute. That provision protects "any other conduct" in furtherance of the exercise of free speech rights "in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) According to defendants, the subsequent private communications "flowed from the homily" and because the homily is protected activity, "surrounding conduct in furtherance of it is necessarily also protected." The case defendants cite does not support that principle, and as we have already observed, conduct is *not* necessarily protected simply because it follows protected activity.

The relevant analysis appears in *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133 (*FilmOn),* which provides direction on how a court should analyze whether communications qualify for anti-SLAPP protection under the catchall provision. We are required to consider the context as well as the content of a statement. (*FilmOn,* at p. 149.) We first look to the content of the speech by asking what public issue or issue of public interest is implicated by the speech in question. (*Ibid.*) And then we ask "what functional relationship exists between the speech and the public conversation about some matter of public interest." (*Id.* at pp. 149-150.) "[W]e examine whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest." (*Id.* at

10

p. 151.) "[A] statement is made 'in connection with' a public issue when it contributes to—that is, 'participat[es]' in or furthers—some public conversation on the issue." (*Ibid.*)

The private discussions that ensued after the homily and after plaintiff's offer to donate funds for a house for the destitute family do not satisfy the *FilmOn* standard. The issue of public interest discussed between the parties was housing for a homeless family. But there is no functional relationship between those private discussions "and the public conversation about some matter of public interest." (*FilmOn, supra,* 7 Cal.5th at p. 150.) The private discussions were not "in connection with" a public issue because they did not "contribute[] to—that is, 'participat[e]' in or further[]—some public conversation on the issue." (*Id.* at p. 151; see also *id.* at p. 150 [" 'it is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate' "].)

As the trial court observed, the complaint did not allege "a broader discussion or public debate over homelessness, its causes or solutions; rather, the Complaint alleges a narrowly focused effort to help a single family of five who were experiencing homelessness after an episode of domestic violence." In short, as in *FilmOn,* the parties' private communications "are too tenuously tethered to the issues of public interest they implicate, and too remotely connected to the public conversation about those issues, to merit protection under the catchall provision." (*FilmOn, supra,* 7 Cal.5th at p. 140.)

## 3.    **Plaintiff's Motion for Sanctions**

After filing his respondent's brief, plaintiff filed a motion in this court asking us to award monetary sanctions of $106,730

11

against defendants for filing a frivolous appeal. According to plaintiff, the appeal was devoid of merit because "most lawyers would recognize that the private conduct here is not subject to California's anti-SLAPP laws," and even if defendants had good cause to file the motion, "once they received and reviewed the opposition by [plaintiff] containing overwhelming evidence in support of his claims, most lawyers would recognize that no credible Prong Two theory could be advanced."

We have not requested a response to plaintiff's motion for sanctions,[2] and we deny the motion.

Plaintiff does not correctly articulate the standard for a frivolous appeal. An appeal is frivolous " 'when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit.' " (*Workman v. Colichman* (2019) 33 Cal.App.5th 1039, 1062.) Nor has plaintiff demonstrated that this case satisfies that standard.

Plaintiff merely states it is "absurd" to apply anti-SLAPP law to this dispute, because "most lawyers would recognize" that false statements made in private conversations after the homily were not protected speech. But *FilmOn* tells us that "private speech or conduct" may be protected if it furthers "the discourse that makes an issue one of public interest." (*FilmOn, supra,* 7 Cal.5th at p. 151.) Moreover, the trial court did not view the case as frivolous; indeed, before the hearing, the court articulated

---

[2] See California Rules of Court, rule 8.276(a) and (c) (a Court of Appeal may impose sanctions for taking a frivolous appeal, and the court "must give notice in writing if it is considering imposing sanctions").

five issues on which it solicited the parties' views, "[t]o help focus argument," and in its ruling referred to the "lengthy interactive oral argument at the motion hearing."  All this belies the notion that "any reasonable attorney" would agree the motion (or the appeal) was totally devoid of merit.

## DISPOSITION

The order denying defendants' special motion to strike is affirmed.  Plaintiff's motion for sanctions is denied.  Plaintiff to recover costs on appeal.


GRIMES, J.


WE CONCUR:



STRATTON, P. J.



VIRAMONTES, J.


13